**UNITED STATES of America**

v.

**Floyd W. McNEIL, Appellant.**

**No. 22360.**

United States Court of Appeals District of Columbia Circuit.

Argued May 7, 1969.

Decided Oct. 31, 1969.

**1110**

Mr. John C. Bennison, Washington, D. C. (appointed by this court), for appellant.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and BURGER * and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

■ Appellant was convicted by a jury on a charge of assault with a dangerous weapon [1]—a stabbing of one Charles Fountain with a knife. Reversal of the conviction is sought principally on the ground that the trial judge erred in allowing testimony by the arresting officer attributing certain oral statements to appellant.[2] We find no error and accordingly affirm.

**I**

Immediately prior to appellant's trial, his counsel [3] moved for suppression of the alleged statements, and the trial judge conducted a hearing. Paul B. Daly, a police officer, chronicled a series of events on which the trial judge's ruling was eventually rested. Officer Daly testified that he arrested appellant at the rooming house in which he lived and read to him the *Miranda* [4] warnings,

---

* Circuit Judge (now Chief Justice) Burger did not participate in the disposition of this case.

1. D.C.Code § 22–502 (1967).

2. The only other contention appellant advances is that the conviction was vitiated by the trial judge's inclusion of *Allen*-type instructions, see Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896), as a part of his general charge to the jurors just before their deliberations began. Our past decisions have sustained renditions of the *Allen* charge, e. g., Fulwood v. United States, 125 U.S.App. D.C. 183, 369 F.2d 960 (1966), cert. denied, 387 U.S. 934, 87 S.Ct. 2058, 18 L.Ed.2d 996 (1967), and appellant challenges the rendition here, not because of its content, but because of its timing. His argument is that *Allen* charges are fatally coercive when given, as here, prior to any report or threat of a deadlocked jury. Not only do we find flat authority to the contrary outside this circuit, Nick v. United States, 122 F.2d 660, 674 (8th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941), but we also take note of our *Fulwood* decision, *supra*.

There the trial judge, in his general charge, incorporated a portion of the *Allen* charge. Later, after the jury had deliberated without achieving a verdict, the judge gave the full *Allen* charge. The jury brought in a verdict of guilty and we affirmed the conviction, overruling a contention that this combination of *Allen* instructions was coercive. 125 U.S.App. D.C. at 185, 396 F.2d at 962. In any event, our appellant registered no objection to the trial judge's charge, see Fed. R.Crim.P. 30, and we are not disposed to find plain error. Compare Washington v. United States, 414 F.2d 1119 (D.C. Cir. Feb. 28, 1969) at 3–6.

3. Not his counsel on appeal.

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). The warnings, printed on a card known as a PD Form 47 and read therefrom to appellant, were as follows:

You are under arrest. Before we ask you any questions, you must understand what your rights are. You have a right to remain silent, you are not required to say anything to us at any time or to answer any questions. Anything you

whereupon appellant stated that "this is my home, I have a right to protect it." The officer said that he then inquired whether appellant did the stabbing, and that appellant responded, in the officer's words, "yes, he had a right to protect his home." Shortly thereafter, the officer averred, appellant was taken to a precinct stationhouse where, without prompting, he declared repeatedly "that it was his home, he had a right to protect it." Appellant, on the other hand, denied that he made any such statements,[5] and denied that any warnings were given. The trial judge, pointing to the conflicting testimony and stating that he was disposed to believe the officer, denied the motion to suppress.

At the trial, Officer Daly was called as a witness for the Government and defense counsel renewed the motion, specifying as his ground the belief that appellant had not fully comprehended the warnings. Counsel pointed to the fact that both the officer and appellant had testified at the hearing that appellant, after arrival at the stationhouse, refused to sign a form acknowledging that he understood the warnings.[6] The trial judge again declined to suppress the alleged statements.

The Government presented testimony to the jury by Fountain, the victim, and by a third-party eyewitness to the offense, which tended to establish that appellant stabbed Fountain without justification. The Government also introduced into evidence a blood-stained knife found in appellant's pocket when he was arrested. The defense, based wholly on appellant's testimony, was in substance that he stabbed Fountain in defending himself when Fountain assaulted him with a hacksaw blade and a bottle. In rebuttal, the Government recalled Officer Daly who then related to the jury the statements appellant is supposed to have made. The jury accepted the Government's version of the affair and convicted.

## II

Appellant does not contend that the trial judge was without warrant in accepting Officer Daly's testimony that he gave the *Miranda* warnings. Nor does appellant raise any issue as to the substantive sufficiency of the warnings given to meet the exacting standards *Miranda* imposes.[7] Instead, appellant argues that the statements Officer Daly narrated to the jury were inadmissible for lack of an adequate showing that he voluntarily and understandably waived his *Miranda* rights. Special emphasis is laid on the fact that appellant refused to sign the acknowledgment form when Officer Daly tendered it at the stationhouse.

■ Indisputably, appellant was in custody without assistance of counsel throughout the period over which the statements were allegedly made.[8] It is

---

say can be used against you in court. You have a right to talk to a lawyer for advice before we question you and to have him with you during questioning. If you cannot afford a lawyer and want one, a lawyer will be appointed for you. If you want to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have a right to stop answering at any time until you talk to a lawyer.
Compare Pettyjohn v. United States, 136 U.S.App.D.C. 69, at 70 n. 3, 419 F.2d 651 at 652 (D.C.Cir. May 16, 1969).

5. He testified that he had denied committing the stabbing when asked about it by Officer Daly.

6. This form, designated PD Form 54, was identical to PD Form 47, *supra* note 4, except that it included an additional paragraph. Compare Pettyjohn v. United States, *supra* note 4, at 4 n. 4.

7. Miranda v. Arizona, *supra* note 4, 384 U.S. at 467–473, 86 S.Ct. 1602.

8. At the hearing, Officer Daly testified that an eyewitness pointed appellant out as the person who committed the stabbing, whereupon he placed appellant under arrest and searched him, removing a bloody knife from his pocket. These events transpired prior to any of the questioned statements. Compare Miranda v. Arizona, *supra* note 4, 384 U.S. at 444, 86 S.Ct. 1602; Brown v. United States, 125 U.S.App.D.C. 43, 46, 365 F.2d 976, 979

equally beyond dispute that there came a time, after the warnings, at which the arresting officer made inquiry of appellant as to certain details of the offense. We are mindful, too, of the consideration that a *Miranda* involvement was not avoided merely by reason of the exculpatory nature of the statements.[9] We proceed, then, to examine appellant's several statements and the circumstances under which they were uttered in order to determine whether any *Miranda* transgression occurred.

■ Officer Daly's testimony, which the trial judge fully credited, was to the effect that immediately after the warnings were given appellant stated that "this is my home, I have a right to protect it." The record makes it plain that that statement was wholly unsolicited by the officer. *Miranda* teaches that "[t]he fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated."[10] We perceive no *Miranda* implications attendant upon appellant's first statement, which clearly was volunteered.

■ And although, on the heels of that statement, Officer Daly asked appellant a question which he answered with another statement continually repeated later, we think the limits *Miranda* prescribes were not overstepped. An ac-

cused, after suitable warning of his rights, may validly waive them provided he does so "voluntarily, knowingly and intelligently."[11] We recognize, of course, the Government's "heavy burden * * * to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."[12] In the case at bar, however, appellant's claim of involuntariness and lack of understanding was squarely presented to the trial judge and was flatly rejected, and only if the judge's decision lacks substantial support in the evidence disposed to alter it.

### III

■ The trial judge had ample opportunity to scrutinize appellant when he testified at the hearing on the motion to suppress, and that opportunity the judge put to use, as his ruling on the motion makes evident.[13] The trial judge could also properly consider the absence of circumstances tending to militate against a valid waiver. Appellant does not claim, nor does the record in any wise hint, any coercion, physical or psychological, in relation to any of his statements. There was no "lengthy interrogation";[14] Officer Daly put very few questions to appellant,[15] while appellant, on the other hand, gratuitously repeated his initially-volunteered statement a good many times over. There was no "incommunicado in-

(1966). See also Mathis v. United States, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

9. Miranda v. Arizona, *supra* note 4, 384 U.S. at 476–477.

10. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police

to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.* at 478, 86 S.Ct. at 1630.

11. *Id.* at 444, 86 S.Ct. 1602.

12. *Id.* at 475, 86 S.Ct. at 1628.

13. As we have stated, the ruling was essentially a credibility assessment.

14. Miranda v. Arizona, *supra* note 4, 384 U.S. at 476, 86 S.Ct. 1602.

15. The officer testified that he asked no questions at all after appellant declined to sign the acknowledgment form.

carceration";[16] appellant's first statements were made while he was still at home, and in the presence of a neighbor.[17] Nor was there the slightest suggestion that appellant "was threatened, tricked, or cajoled into a waiver."[18]

■ Appellant summons but one circumstance—his refusal to sign the acknowledgment form—in his effort to support the thesis of an involuntary, unintelligent waiver of his rights. Certainly the execution of that form was not a condition precedent to an effective waiver.[19] Nor do we deem its nonexecution cogent evidence of a misapprehension of the warnings Officer Daly gave. One can readily envision reasons for a declination to sign an acknowledgment of warnings that are entirely unrelated to an understanding of the warnings.[20] The trial judge was free, upon renewal of the motion to suppress, to appraise that equivocal act in the context of all relevant circumstances disclosed by the record,[21] and we find no basis in the evidence to alter the treatment he gave it.[22] Surely the judge could accept at face value appellant's own testimony at the hearing that he did not sign the acknowledgment form, not for any stated reason that he did not understand the warnings, but simply because he was adverse to signing anything at all.[23]

The judgment of appellant's conviction is

Affirmed.

16. Miranda v. Arizona, *supra* note 4, 384 U.S. at 476, 86 S.Ct. 1602.

17. One Walter Johnson, who occupied a room in the same rooming house in which appellant lived, was present when he was arrested and made the first statements at the house.

18. Miranda v. Arizona, *supra* note 4, 384 U.S. at 476, 86 S.Ct. at 1629.

19. United States v. Hayes, 385 F.2d 375 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed.2d 106 (1968).

20. See *id.*

21. *Id.* Compare Pettyjohn v. United States, *supra* note 4, 136 U.S.App.D.C.

69, 419 F.2d 651, where we sustained the admission of oral confessions although the accused subsequently refused to sign a written statement incorporating them. And in the case at bar, unlike Frazier v. United States, (D.C. Cir. March 14, 1969), the trial judge's ruling upon an assessment of the evidence resolves any doubt that could arise from appellant's refusal to sign the acknowledgment form as to whether he understood the warnings.

22. Compare United States v. Hayes, *supra* note 19.

23. The explanation appellant gave, several times from the witness stand, for his nonexecution of the acknowledgment form was only that "I wouldn't sign nothing."