**Charles E. ROSSER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6909.**

District of Columbia Court of Appeals.

Argued Oct. 10, 1973.

Decided Jan. 4, 1974.

4. D.C.Code 1973, § 16–304(e) & § 16–309(b)(3). See In re Adoption of Female Infant, D.C. App., 237 A.2d 468 (1968).

—————◆—————

Frederick J. Sullivan, Washington, D. C., appointed by this court, for appellant.

James N. Owens, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Charles E. Wagner, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

Appellant appeals from convictions of possession of narcotics paraphernalia (D.C.Code 1973, § 22–3601) and possession of a dangerous drug—desoxyn (D.C.Code 1973, § 33–701(1)(A)), in violation of D. C.Code 1973, § 33–702(a)(4). His appeal primarily encompasses claims of error on admissibility of statements under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), improper influence during interrogation, insufficiency of evidence, and failure to establish a sufficient chain of custody of contraband evidence. We affirm the convictions.

On October 6, 1972, three police officers entered the apartment house where appellant lived, seeking to serve a third party with an arrest warrant. In error, the officers knocked on appellant's door. After identifying themselves, two of the officers were invited by appellant into his apartment as he did not wish other tenants to "know his business". Once inside, the officers noticed on top of a dresser what appeared to be narcotics and narcotics paraphernalia. Particularly, the officers saw a burned bottle top containing a yellowish-white pill (a "leached" desoxyn tablet), a syringe, and a syringe needle and needle cover. Appellant was immediately arrested. He refused to provide the officers with identification, whereupon one of the officers obtained appellant's wallet. On examining its contents for identification purposes, the officer found and removed two tinfoil packets containing a white powdery substance. Appellant was handcuffed and removed from his apartment. He was advised of his *Miranda* rights in front of the apartment building. At this time appellant acknowledged he understood his rights.

Appellant was then transported to the police station where the arresting officer conducted a booking interview. Testimony from the record shows that less than ten minutes elapsed between the time appellant's rights were stated to him and the booking interview began. Appellant was not readvised of his rights prior to commencement of the interview.

There was conflicting testimony as to the events that transpired during the interview. The officer testified that during the interview appellant was asked if he wanted to seek citation release,[1] but at no time was the release promised in exchange for appellant's cooperation in answering the booking interview questions. Appellant testified that the arresting officer had mentioned the release and that he refused to answer questions until another officer

---

1. D.C.Code 1973, § 23–1110(b)(2) and (3).

promised that appellant would be eligible for release if he cooperated.

During the interview, appellant was asked whether he used narcotics and he replied that he used "two spoons of heroin a day." He also stated that there was no law against having the items in his apartment. At the end of the interview, appellant asked about the release and he was told by the arresting officer that it was impossible because of his previous arrest record. At trial a motion to suppress the statements was denied.

Appellant first contends that his statements were inadmissible because the arresting officer failed to readvise him of his *Miranda* rights before the booking interview began. He argues that *Miranda* requires "something more than merely a half-hearted effort to perfunctorily inform the accused of his rights." Presumably, "something more" in this context would mean that appellant should have been reinstructed concerning his rights prior to interview. It is also argued that the time lapse between arrest and interview was sufficient to mandate the stating of the *Miranda* rights again. There is authority in other jurisdictions holding that an otherwise admissible statement is not rendered inadmissible simply because of an absence of reinstruction as to *Miranda* rights.[2] We express the issue differently. Of concern here is whether there was sufficient evidence to permit the trial court judge to conclude that appellant had made a knowing and intelligent waiver. We conclude the evidence was sufficient.

■ In determining whether there is a valid waiver, the court should consider such factors as the individual's prior experience with the legal system,[3] the circumstances of the questioning,[4] any allegation of coercion or trickery resulting in a confession,[5] and any delay between arrest and confession.[6] At the evidentiary hearing the arresting officer testified that he read Metropolitan Police Department Form PD-47 to appellant, advising him of his rights and that appellant acknowledged he understood what was said to him. Appellant's contradictory testimony was that the officer merely had told him that what he said would be used against him. Upon cross-examination appellant admitted that he purposefully did not pay attention to the officer while those rights were being read. Appellant also acknowledged that he was familiar with his rights, having had them read to them when arrested on two previous occasions.

■ At the close of the examination, the trial judge asked the following questions:

THE COURT: When you were arrested, Mr. Rosser, you were aware that you did not have to answer any questions by the police?

THE WITNESS: Yes, I know that.

THE COURT: You were also aware that you could have a lawyer appointed to represent you?

THE WITNESS: That's right.

THE COURT: If you did not have enough money they would have a lawyer represent you free of charge, you knew that?

THE WITNESS: Right.

2. Miller v. United States, 396 F.2d 492 (8th Cir. 1968) ; People v. Hill, 39 Ill.2d 125, 233 N.E.2d 367 (1968).

3. Mitchell v. United States, 140 U.S.App.D.C. 209, 434 F.2d 483, cert. denied, 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970). *Cf.* Hensley v. United States, D.C.Mun.App., 155 A.2d 77 (1959), aff'd, 108 U.S.App.D.C. 242, 281 F.2d 605 (1960).

4. United States v. McNeil, 140 U.S.App.D.C. 3, 433 F.2d 1109 (1969).

5. Miranda v. Arizona, *supra* 384 U.S. at 476, 86 S.Ct. 1602; United States v. McNeil, *supra* 140 U.S.App.D.C. at 7, 433 F.2d at 1113.

6. Hawkins v. United States, D.C.App., 304 A.2d 279 (1973).

THE COURT: You knew that if you answered any questions it would be used against you in Court, did you know that?

THE WITNESS: Yes, that's why I wasn't going to talk.

Based upon the testimony it was evident to the judge that appellant was familiar with his rights and particularly that he understood the import of those rights. We conclude, based upon this record, that the trial judge did not err in finding appellant's statements to have been the product of an intelligent and voluntary waiver of rights.[7]

Appellant asserts that his impeachment by a prior inconsistent statement was error in the absence of yet another *Miranda* hearing. At trial appellant testified that friends had used his apartment during the early morning hours of the day of the arrest, and, when questioned by the police about the paraphernalia, he stated he had never seen it before, declaring, "[T]he only way it possibly could come there is by [my friends]." The government, in rebuttal to this testimony, was allowed once again to call the arresting officer. The officer recited two statements made by appellant during the booking interview. In response to a question about "friends and associates", appellant told the officer he did not have any friends. Asked whether he considered himself a "loner", appellant responded, "Yes, I stay by myself all the time." It should be noted that this statement was made during the same interview which resulted in two previously introduced statements about appellant's drug use.

As observed, *supra* (footnote 7), the trial court believed the testimony revealing that no mention of citation release was made

before the appellant made his statements. Appellant did not thereafter attempt to make his factual version an issue for jury consideration. Under the circumstances, we consider this contention on the facts as found by the trial court at the *Miranda* hearing and hold that it was not error to have permitted impeachment by these previous statements.

Appellant further contends that the failure to prove he actually possessed any narcotics makes the paraphernalia conviction invalid. Testimony by the forensic chemist reveals that no traces of narcotics were recovered from any of the confiscated material. Analysis showed that the powdery substance retrieved from the tinfoil packets contained sucrose and starch. The tablet found originally in the bottle top cooker was found to be desoxyn—a controlled substance. All three of these substances were shown to be used in "cutting" and injecting heroin. On the syringe and needle was found a quantity of quinine—also significant in heroin use.

This court has recognized, in cases involving narcotics paraphernalia, that each case is governed by its own facts.[8] The statute in question provides in pertinent part:

> No person shall have in his possession . . . any instrument, tool, or other implement . . . that is usually employed . . . in the commission of any crime. . . . [D.C.Code 1973, § 22–3601.]

In interpreting this statute, the court has stated that to convict there must be proven (1) possession of the implement, and (2) intent by the accused to use the implement.[9] It has also been recognized

---

7. We are unpersuaded that the few minutes lapse of time between the *Miranda* warning at the apartment and the interview deprived appellant's responses of requisite attributes of admissibility. The same may be said of his testimony that he was promised a citation release. The officer testified and the court believed that no mention of citation release was made before appellant's responses. United States v. McNeil, *supra* note 4, 140 U.S.App.D.C. at 6, 433 F.2d at 1112.

8. Jones v. United States, D.C.App., 282 A.2d 561 (1971).

9. McKoy v. United States, D.C.App., 263 A.2d 645, 649 (1970).

that proof of intent may be inferred from possession of "sinister" items.[10] With this as a predicate for review, we consider the record on appeal as persuasive in supporting the conviction of possession of narcotics paraphernalia even though no traces of heroin were found. Edelin v. United States, D.C.App., 227 A.2d 395, 397 (1967). Specifically, the components of the paraphernalia kit included a hypodermic needle, syringe, and a "cooker". It is also significant that these articles were assembled together in one place and that a "leached" desoxyn tablet was found within the cooker. The tablet is partially consumed by the leaching process each time a heroin injection is prepared. As this court stated in Edelin v. United States, *supra* at 397:

> Narcotics paraphernalia is not the fruit of a crime, a weapon, or property the mere possession of which constitutes a crime. It is, however, the means and instrumentality by which narcotics may be illegally used. While the articles seized from appellant's room might not compel such a finding if found singly or separately, when hidden together as an apparent user's "kit," the paraphernalia is clearly the means by which a crime may be committed. . . . [Footnote omitted.]

This inherently "sinister" combination of paraphernalia and substances coupled with the admissible statement by appellant that he uses "two spoons of heroin a day" is, we conclude, sufficient support for the convictions.[11]

 We find no merit to appellant's contention that the government failed to establish an unbroken chain of custody as a matter of reasonable probability. The testimony adduced at trial showed that there was no evidence that the envelopes had been tampered with and sufficiently explained any reason for delay in delivery.[12]

In the final analysis, we find no points of error claimed by appellant that would justify a reversal of his convictions. Therefore, the judgment of the trial court is

Affirmed.

---

10. McKoy v. United States, *supra* note 9; Benton v. United States, 98 U.S.App.D.C. 84, 232 F.2d 341 (1956).

11. McKoy v. United States, D.C.App., 263 A.2d 649, 651 (1970).

12. Further, there was no abuse of discretion by the trial court's failure to request a pre- sentence report. Here there was sufficient information developed concerning appellant that the judge could impose an appropriate sentence without the use of a presentence report. Wilson v. United States, D.C.App., 278 A.2d 461 (1971); Thomas v. United States, D.C.App., 229 A.2d 155 (1967).