**UNITED STATES of America**

v.

**Donald M. COOPER, Appellant.**

**No. 73-1745.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 22, 1974.

Decided June 6, 1974.

Rehearing Denied July 15, 1974.

Michael Joseph, Washington, D. C., with whom Stephen F. Owen, Jr., Washington, D. C. (both appointed by this Court), was on the brief, for appellant.

James M. Hanny, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Earl J. Silbert, U. S. Atty., and James F. McMullin, Asst. U. S. Atty., also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

This is the story of a bank robber who dropped his calling card in front of the teller's cage. When the FBI accepted his implied invitation to call, he opened the door to his apartment and other incriminating information, which resulted in his conviction. All this he now regrets, and seeks to withdraw his ill-advised assistance to law enforcement. This we hold he cannot do.

I.

The robbery of the American Security and Trust Company branch on Pennsylvania Avenue, N.W., occurred on the

morning of 20 April 1972. In front of the teller's cage the FBI picked up an envelope addressed to Donald M. Cooper, 1941 U Place, S.E. Pictures taken during the course of the robbery were identified by Donald M. Cooper's former co-workers at the Federal Reserve Board as being the named person.

At approximately 2:40 p. m. the FBI Special Agent investigating, accompanied by three other FBI agents, knocked on Mr. Cooper's door. They identified themselves as FBI agents and asked the appellant if they could come in and speak with him, to which Cooper replied, "Certainly." After entry, the Special Agent immediately read to Cooper the FBI standard *Miranda*-type warning statement as to Cooper's rights,[1] and then advised Cooper that they were investigating a robbery at the American Security and Trust Company that morning. The agent then handed the prepared written *Miranda* warning of his rights to appellant Cooper for him to read. After reading it, Cooper was asked if he fully understood what his rights were; he replied that he did.

However, when the agent then asked appellant if he would sign the written waiver-of-rights form, Cooper replied that he would not sign the waiver before he spoke with an attorney. Cooper's refusal to sign the waiver form was accompanied or followed by a statement that he was desirous of answering the FBI questions, but he would answer only those he chose to answer. He then proceeded, in answer to the agent's question, to give an account of his whereabouts and movements from 5:00 p. m. on 19 April through the morning of 20 April, which was a denial that he had ever been in the bank or its vicinity at the time of the robbery or anytime that day.

When confronted with (1) the department store current bill with his name on it, and (2) eight photographs taken during the robbery, Cooper declared that he did not understand how the current account statement addressed to him got there and denied that he was the man in the photographs. The robber in the photographs was wearing a distinctive pair of striped trousers, and equally distinctive eyeglasses and shoes. When the agent pointed out that Cooper's shoes and eyeglasses were identical to those in the photographs, appellant sought to evade this direct coincidence by saying, "But I have no clothing at all which looks like that. Come upstairs and see for yourself. Come look at my wardrobe. See for yourself, I have no such clothing." The agents accepted this invitation with alacrity; in a few moments they retrieved a pair of men's pants, identical to those shown in the photographs, right from the closet Cooper had so confidently offered for examination.

The above facts were established by the testimony, uncontradicted, of the FBI agents at the preliminary hearing, held on appellant's motion to suppress,

---

1. The document is headed, "Interrogation; Advice of Rights—Your Rights

"Place—Washington, D.C.

"Date—April 20, 1972

"Time—2:41 P.M.

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

Thereafter follows a Waiver of Rights:

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

on the basis of Miranda v. Arizona,[2] his statements in the interview and the pair of trousers. Appellant Cooper himself did not testify at the suppression hearing, although he could have done so without any risk of his testimony being used against him at the trial, if his version of the first interview would have differed in any material way from that testified to by the FBI agents. At the trial, appellant did take the stand in his *own defense, and, while denying that he perpetrated the robbery*, did give an account admitting that he was present in the bank on the morning of the robbery. On this point, appellant's testimony was of course directly contradicted by his own previous story to the FBI agents on the day of the robbery.

On this appeal the only two points of alleged error are the failure of the trial court to suppress appellant's previous inconsistent statements and the failure to suppress the tangible evidence of the trousers found in appellant's closet.

## II.

We think the disposition of this case is governed by the Supreme Court's recent decision in Schneckloth v. Bustamonte,[3] and particularly by our own *en banc* decision in United States v. Frazier[4] as to the validity of appellant's consent to the search and the voluntariness of his statements to the FBI agents.

Turning to the statements first, in *Frazier* the appellant made a similar distinction between oral and written statements; Frazier asked the interviewing policeman not to take notes, said he would not talk if the officer made notes, but continued to talk freely when the officer put down his pencil. Here Cooper made a more discriminating distinction. After being fully warned orally and in

writing, in accordance with the *Miranda* requirements, Cooper declined to sign a written waiver form without consulting an attorney, which was one of his *Miranda* rights; he then stated that he was willing to answer questions of the agents, but reserved the right to decline to answer any questions which he did not wish to answer, another exercise of his *Miranda* rights indicating understanding thereof. Cooper, it is apparent, was engaged in an effort to throw the agents off the scent with a misleading display of candor, not realizing the knowledge the agents already possessed.

It is to be noted that appellant Cooper, unlike Fraizer, was a man of demonstrated intelligence; he had a Bachelor of Science degree in mathematics and had held responsible employment.

In two cases before *Fraizer*, United States v. McNeil[5] and Pettyjohn v. United States,[6] we rejected the inference that, simply because the accused refused to sign anything in writing, he did not understand the *Miranda* warnings. It is, we think, a common experience of life that in many circumstances persons are willing to convey information orally but are reluctant to put the same thing in writing. We do not think, as *Frazier en banc, McNeil,* and *Pettyjohn* have made clear before, that a refusal to sign a waiver means that the person interrogated is assuming a contradictory position with respect to his willingness to respond to oral questions, whatever may be his motive in so doing.

In *McNeil* we said, "Certainly the execution of that form was not a condition precedent to an effective waiver."[7] And as the Fourth Circuit explained in United States v. Hayes, "Just as the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights

2. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

4. 155 U.S. App. D.C. 135, 476 F.2d 891 (1973).

5. 140 U.S.App.D.C. 3, 433 F.2d 1109 (1969).

6. 136 U.S.App.D.C. 69, 419 F.2d 651 (1969).

7. 140 U.S.App.D.C. at 7, 433 F.2d at 1113 (citation omitted).

will not discharge the government's burden, so the mere absence of such a statement will not preclude as a matter of law the possibility of an effective waiver."[8] We subscribe to the view expressed by the Fifth Circuit, "A refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstance of custody."[9] Our dissenting colleague relies upon certain cases from the Fifth and Seventh Circuits. In our view these are distinguishable on the facts from the case at bar, and, in fact, have already been so distinguished. In the American Law Institute "Model Code of Pre-Arraignment Procedure," Tentative Draft No. 6, 1 April 1974, the Commentary on previous decisions regarding Requirement of a Signed Waiver (pp. 161–62) states:

> Courts have not required a signing of a waiver before the commencement of interrogation, and they have taken differing views on the effect of such a signing. [Footnote omitted.] The situation of a suspect who refuses to sign a waiver or put his statement in writing but who gives an oral waiver and answers questions freely has caused some difficulty, with the federal courts holding that statements

made in this situation are admissible if the trial court has held an evidentiary hearing and determined that the oral statements were made voluntarily, with the knowledge that they could be used as evidence, [footnote omitted] and after an intelligent waiver of rights.[12]

12. The circuits are unanimous in this view (citing cases from all eleven circuits). In determining whether the suspect has actually made a voluntary and knowing waiver, the Fifth and Tenth Circuits have ruled that answers to questions put after a refusal to sign a waiver form are inadmissible unless the questions are asked in the context of a conversation voluntarily initiated by the suspect.

Here the evidence is uncontradicted that Cooper, while declining to sign the form in the absence of an attorney, said he was desirous of answering questions, and thus "voluntarily initiated" the following conversation. Thus, on the law as we understand it, Cooper's statements would be admissible.[10]

■ We find it unnecessary to define Cooper's precise situation as being either "unrestrained," "custodial," or "arrest," because we find in the uncontradicted testimony as to the circumstances of the interview that there was absolutely no coercion manifested, aside from

8. 385 F.2d 375, 377 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S.Ct. 1250, 20 L.Ed. 2d 106 (1968).

9. United States v. McDaniel, 463 F.2d 129, 135 (5th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973).

10. The particular section of Tentative Draft No. 6, relied on by the dissent, has not yet been voted on by the Institute. 15 Crim.L. Rep. 2203. A final proposed draft is planned to be submitted in 1975. In our view this section of the Draft is not required by *Miranda*, and is definitely contrary to the trend of decided cases in the Courts of Appeal, as the Commentary makes clear. In Cooper's case here we decline to expand *Miranda*, preferring to rest our decision on the law as it is.

The most recent case on this issue with comparable facts is United States v. Biondo, 483 F.2d 635 (8th Cir. 1973), cert. denied, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974). The defendant was taken into custody and given a *Miranda* rights and waiv-

er form, which he refused to sign. Further questioning by agents followed, and defendant made an inculpatory statement. Later, however, he indicated that he did not wish to answer any further questions, and the interview terminated. The Eighth Circuit held that the record "clearly supports the trial judge's conclusion that [defendant] knew his rights and voluntarily and intelligently waived his *Miranda* privilege. It is evident from his reading of the form in question, his declination to sign the same, and his subsequent refusal to answer further questions that [defendant] was well aware of his rights and, notwithstanding, continued to answer questions. This is not to say that the mere fact that a statement was eventually obtained indicates that the accused waived his rights . . . . However, that he understood the warning and waived his rights is seen from his subsequent statement that he did not wish to answer any more questions and decided to conclude the interview." *Id.* at 642–643.

the degree of disquietude which any citizen might feel upon being interviewed by law enforcement officials. The interview was conducted in appellant Cooper's own living room, he had invited the officers to enter, he was warned of his rights, he exercised some of his rights by refusing to sign anything and by indicating he might decline to answer some questions,[11] he talked freely as to those questions which he did answer, he himself originated the idea of the officers searching his closet to compare his wardrobe with that of the bank bandit.

We think it important that Cooper did not in any way dispute the circumstances establishing voluntariness testified to by the FBI agents at the suppression hearing, at a time when he clearly could have done so without prejudice, had there been any contradictory evidence he could have honestly offered.[12] The actions of appellant Cooper here certainly fall within the concept of voluntariness as explained in Schneckloth v. Bustamonte, *supra*, where the Court said, "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."[13] This was spoken in relation to a situation in which the later accused was not in custody, and while Cooper's situation might be termed a custodial one, we think the evidence demonstrates as full a knowledge by appellant Cooper as to his rights under the *Miranda* standard as it is possible to conceive, and that with full awareness of his rights, Cooper did go forward and make statements in an effort to evade detection, such statements redounding to his ultimate prejudice.

The conviction for bank robbery[14] is Affirmed.

FAHY, Senior Circuit Judge, dissenting:

The en banc decision of this court in *Frazier*, relied upon by the court, does not seem to me to divert *Miranda* from requiring in the present case the exclusion of the evidence attributable to the in-custody interrogation of Cooper. In determining that Frazier had knowingly and intelligently waived his Fifth Amendment privilege this court had the benefit of findings that he had, made by the District Court at a hearing on a remand devoted to the subject. No comparable probing of the waiver problem in Cooper's case is before us.[1] *Frazier* is also distinguishable on the basis that Frazier had actually signed a written waiver, whereas Cooper refused to do so until be spoke with an attorney. His full statement when the waiver was offered to him to sign, according to the testimony of the F.B.I. agent who conducted the interrogation, is as follows:

[Cooper's] reply was that he would not sign the waiver to these rights before he spoke with an attorney. However, he was desirous of answering questions put to him. However, he would answer only those he chose to answer.

I approach the issue before the court by emphasizing two aspects of the *Mi-*

---

11. Cooper also refused the agents permission to search his home *after* the discovery of the trousers, showing a continued awareness of his rights. No further search was made.

12. In our view, it makes no difference "that it was the F.B.I. agent, not Cooper, who testified 'he [Cooper] was desirous of answering questions put to him,'" as urged by our dissenting colleague (p. 1067). The evidence of voluntariness was clear and uncontradicted. Surely the question of voluntariness of the accused's statements cannot turn solely on the physical fact of whose mouth opened first.

13. 412 U.S. at 248–249 (citation omitted).

14. 18 U.S.C. § 2113(a).

1. The District Court at the suppression hearing in this case found only that Cooper's statements were voluntary.

*randa* opinion. The first is the following statement of the Supreme Court:

If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.

384 U.S. at 474.

Cooper clearly indicated that he wanted to consult an attorney when he was asked to waive his rights. Considered alone, this was an indication that he wished to remain silent. Accordingly, the Supreme Court said, "the interrogation must cease." 384 U.S. at 474.

The second aspect of *Miranda* I emphasize revolves around the agent's statement, "However, he was desirous of answering questions put to him." Such a desire, as it bears upon the problem of self-incrimination, is inconsistent with Cooper's preceding refusal to sign the waiver of his rights unless this testimony of the agent that Cooper was "desirous of answering questions put to him" met the "heavy burden [which] rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" once he "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent. . . ." 384 U.S. at 473–474, 475. I fail to find any basis for holding this heavy burden was met.

In United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968), a similar situation arose. The interrogation was also by F.B.I. agents who advised the suspect of his constitutional rights under *Miranda*, as Cooper was advised. Nielsen then, as the facts are stated by the Court of Appeals,

. . . said he had a retained attorney and would not sign a waiver of rights form or "anything" until he talked to his attorney. At this point, the agent asked the defendant if he wanted to call his attorney. The defendant replied that he would wait to call until later in the morning but that "they" could continue questioning him. Resumption of questioning by

the agent resulted in the defendant responding to five questions in the negative.

392 F.2d at 852. In the above situation the Court of Appeals held as follows with respect to the further interrogation:

There can be no question that when the defendant in the instant case refused to sign anything until he saw his attorney, he indicated a desire to remain "silent." Since the interrogation continued beyond that point, the Government had a "heavy burden" to show that the subsequent interrogation of the defendant took place after he "knowingly and intelligently" waived his *Miranda* rights. We do not believe that the Government satisfied this burden.

. . . Here the defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion. However, no further inquiry took place. In the absence of such an inquiry, we are compelled to conclude that the defendant's negative responses to the questions asked him were not made after a knowing and intelligent waiver of his rights. Consequently, the trial court erred in admitting the testimony of the subsequent interrogation. (Footnote omitted.)

392 F.2d at 853.

A similar situation came before the Court of Appeals for the Fifth Circuit in United States v. Phelps, 443 F.2d 246 (1971). There the questioning continued after the investigator, by reading to him a standard "rights" form, had ad-

vised the suspect of his rights. He declined to sign a printed waiver, but indicated he did not want a lawyer present and that he knew his rights. Thereafter he made incriminating statements to the officers. The District Court granted his motion to suppress the statements. On the Government's appeal the Court of Appeals stated:

> In the present case the record shows that immediately after the investigators discovered the illegal weapon, they properly warned Phelps of his rights. Phelps, while professing to understand and declining the assistance of a lawyer, indicated by his refusal to sign the waiver that he did not wish to waive his right to remain silent. The officers' interrogation, therefore, should have ceased at this point.
>
> \*   \*   \*   \*   \*   \*
>
> In the present case we are unable to tell whether Phelps validly waived his right to remain silent or not. It is clear that after Phelps refused to sign the waiver, the officers should have ceased interrogating him. It is also clear that subsequent conversation did occur between the investigators and Phelps. The hearing on the motion to suppress does not reveal, however, whether the subsequent questions by the officers were the result of voluntary conversation initiated by Phelps or whether these questions were initiated by the officers themselves without any instigation by Phelps. If the former situation obtains, then under our decision in *Hopkins* [United States v. Hopkins, 433 F.2d 1041 (5th Cir. 1970)], Phelps' subsequent answers would be admissible. If the latter situation obtains, however, *Miran-*

*da* compels that we hold the answers inadmissible. The record of the hearing is silent as to these crucial facts, probably because the trial court made its determination prior to our decision in *Hopkins*. We think, therefore, that justice will best be served by holding a further evidentiary hearing to determine whether Phelps voluntarily waived his right to remain silent.

443 F.2d at 249–250.[2]

United States v. Ramos, 448 F.2d 398 (5th Cir. 1971), is also helpful. The Government there had initiated further questioning after the suspects refused to sign waivers. The court held:

> In the instant case the record clearly reveals that neither of the defendants voluntarily initiated further conversation subsequent to their refusals to sign a waiver form. Rather, the government agent himself initiated further questioning without any instigation by either defendant. Therefore, under our decision in *Phelps* [*supra*], we hold that the agent's refusal in this case to terminate each interview violated the Supreme Court's mandate in *Miranda* and that the defendants' incriminating statements were thereby rendered inadmissible.

448 F.2d at 399.

The court refers to a Commentary accompanying the American Law Institute Model Code of Pre-Arraignment Procedure (Tent. Draft No. 6, 1974). The court's reference is to Part IB of the Model Code entitled "Procedure from Appearance at Police Station to First Judicial Appearance" and is concerned, *inter alia,* with "Conditions on Questioning Arrested Persons." The proposed Model Code gives no support to my

---

2. In United States v. McDaniel, 5 Cir., 463 F.2d 129, 135–136, referred to in footnote 9 of the present court's opinion, the Fifth Circuit distinguishes *Phelps, supra,* finding that McDaniel, after refusing to sign the waiver, affirmatively indicated a willingness to maintain the conversation. The court stated: " . . . he volunteered unsolicited information. . . . " The court nevertheless recognized that his conviction "treads perilously close in some respects to the borders of . . . the Fifth Amendment-*cum-Miranda*." I might add that the Court of Appeals in my opinion gave undue weight to the voluntary nature of the information furnished by McDaniel and less than the weight due to the burden upon the United States of establishing an intelligent and knowing waiver of rights.

brethren, but, rather, strongly adheres to the language and policy of *Miranda*. Thus section 140.8(2)(d) under "Waivers," provides:

(d) No waiver shall be sought from an arrested person at any time after he has indicated in any manner that he does not wish to be questioned or that he wishes to consult counsel before submitting to questioning.

In its Commentary upon this proposed provision the ALI states:

(C) *Requirement of a Signed Waiver*. Paragraph 140.8(2)(b) provides that a suspect is to be given the *Miranda* warnings and asked to sign a statement acknowledging that he wishes to make a statement or answer questions in the absence of counsel before being interrogated. The signing of this statement is an absolute prerequisite to interrogation in the absence of counsel, and a refusal to sign is an "indication" for purposes of Paragraph 140.8(2)(d). Courts have not required a signing of a waiver before the commencement of interrogation, and they have taken differing views on the effect of such a signing. The situation of a suspect who refuses to sign a waiver or put his statement in writing but who gives an oral waiver and answers questions freely has caused some difficulty, with the federal courts holding that statements made in this situation are admissible if the trial court has held an evidentiary hearing and determined that the oral statements were made voluntarily, with the knowledge that they could be used as evidence, and after an intelligent waiver of rights. (Footnotes omitted.)

ALI Model Code of Pre-Arraignment Procedure, *supra*, at pp. 161–62.

Part IA of the ALI Model Code of Pre-Arraignment Procedure (Prof.Off. Draft No. 1, 1972) governing "Procedure from First Police Contact Through Arrest" (the Cooper situation), provides at section 120.8(2):

(2) *Limitations on Questioning*. No law enforcement officer shall question an arrested person if such person has indicated in any manner that he does not wish to be questioned, or that he wishes to consult counsel before submitting to any questioning.

It seems clear that the weight of authority is that once the suspect, being warned, refuses to sign a proffered waiver without consulting counsel, the custodial interrogation must cease.[3] The interrogation may be validly resumed only upon the initiative of the suspect, with a heavy burden upon the United States to establish that fact, failing which a subsequent incriminating statement in answer to resumed interrogation is inadmissible.

In an attempt to meet this problem the court states:

Here the evidence is uncontradicted that Cooper, while declining to sign the form in the absence of an attorney, said he was desirous of answering questions, and thus "voluntarily initiated" the following conversation. Thus, on the law as we understand it, Cooper's statements would be admissible.

Surely the court is mistaken in stating that Cooper said he was desirous of answering questions after declining to sign the waiver, and that he "voluntarily initiated" the subsequent conversation. The record reveals, as I have pointed out, that it was the F.B.I. agent, not Cooper, who testified "he [Cooper] was desirous of answering questions put to him." Even were we to imply that Cooper expressed the desire this would not support the court's ruling that the incriminating statements were admissible, because there is a complete absence of evidence whether such desire was "voluntarily initiated" by Cooper or followed only after the F.B.I. agents

---

3. I find nothing in the *McNeil* and *Pettyjohn* decisions of this court to the contrary, especially considering their particular factual situations.

probed the situation with him following his refusal to sign the waiver.

The court does not bridge the gap in evidence by relying upon circumstances establishing voluntariness testified to by the F.B.I. agents, citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The court thus would substitute voluntariness for the *Miranda* standard of admissibility, which requires proof of a knowledgeable and intelligent waiver as well as a voluntary one.

*Schneckloth* was concerned with the validity of a consent to a search. The question was whether the consent was valid in the absence of knowledge of the right to refuse consent. The Court held such knowledge was not essential. The test applied was whether the consent was voluntary in the surrounding circumstances. As to that, lack of knowledge was a circumstance to be considered but was not controlling.

Not only was the Court explicit in limiting its decision to a consent by one not in custody—a situation we do not have in Cooper's case [4]—but the *Miranda* issue before us is not one of voluntariness as that concept was involved in *Schneckloth*. *Miranda* requires that we decide whether the compulsion inherent in custodial interrogation is removed by a knowledgeable and intelligent waiver of rights, which of course must also be voluntary. Voluntariness is but one aspect of the three-pronged *Miranda* test. The court's present reliance upon what it refers to as a lack of coercion—voluntariness—ignores the basis upon which *Miranda* governs the application of the Fifth Amendment privilege, which was not involved in *Schneckloth*.

In Cooper's case the waiver of his *Miranda* rights turns upon whether he affirmatively initiated further interrogation and thereby abandoned his desire to remain silent indicated by his refusal to sign the waiver. If not, incriminating answers to such uncounseled custodial interrogation are inadmissible under *Miranda* as the product of compulsion.

The court turns to Cooper's silence for support not only on the issue which the court poses as one of voluntariness, but also in ascribing to Cooper the initiation of further questioning by the agents after he had refused to sign the waiver. Cooper's silence, however, is not a substitute for the heavy burden of the United States to establish the facts respecting the initiation of the further questioning—an essential factor in establishing a knowing and intelligent waiver of the right to remain silent. In *Nielsen, supra,* this burden, not having been borne, the evidence was ruled inadmissible. And see *Ramos, supra.* In *Phelps, supra,* as in our first *Frazier* case, 419 F.2d 1161 (D.C. Cir. 1969), a remand for a hearing to resolve the factual issue was required.

The court stresses that Cooper understood the *Miranda* warnings. I do not disagree that Cooper understood the words contained in the enumeration of his rights which were read to him. But it does not follow that he understood that he had the right, upon refusing to sign the waiver until he consulted an attorney, not to be further questioned in the absence of an attorney, or that he had the right to remain silent unless he thereafter initiated further examination by the agents. I do not think *Miranda,* with its strong emphasis upon the importance of safeguarding the Fifth Amendment privilege as one of the fundamental protections of the dignity of the human personality of a suspect confronted with an effort by the Government to obtain self-incrimination, can be swallowed up by finding that the suspect understood the meaning of the recitation of his rights.

The court states that appellant was an intelligent man, having earned a Bachelor of Science degree. This is of slight significance in determining whether he

---

4. The court's opinion does not deny that the interrogation of Cooper was custodial; in any event it was in my opinion, and the Government so stated during oral argument.

knowingly and intelligently waived his *Miranda* rights. Such a waiver must be determined with reference to some knowledgeability and intelligence regarding his rights and their waiver. Moreover, the majority omits to note that in a report to the Clerk of the Criminal Division of the District Court the Superintendent of St. Elizabeths Hospital advised that on or about the time of the offense, which was the day of the interrogation, Cooper "is diagnosed as Schizophreni[c], paranoid type," and "was suffering from a mental disease which substantially affected his mental and emotional processes and substantially impaired his behavioral controls. . . ."[5]

The evidence against Cooper, exclusive of that resulting from the interrogation above discussed, was substantial. Nevertheless, strength of evidence of guilt, we know from a long line of Supreme Court decisions, is not to influence the judiciary in passing upon the possible violation of the Fifth Amendment privilege. Malinski v. New York, 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029 (1945).

Either of two courses I think are open to the court. One would be to remand for an evidentiary hearing and findings of fact with respect to who initiated the questioning which followed appellant's refusal to sign the waiver, the course adopted in *Phelps, supra.* The other would be, as in *Nielsen, supra,* to set aside the conviction and remand for a new trial without the use of appellant's incriminating statements challenged on this appeal, or the fruits of the search which also resulted from the custodial interrogation following his refusal to sign the waiver.

Since the court adopts neither course, I respectfully dissent.