**UNITED STATES of America, Appellee,**

**v.**

**Ernest MALIZIA, Defendant-Appellant.**

**No. 1132, Docket 74–1389.**

United States Court of Appeals, Second Circuit.

Argued June 18, 1974.

Decided Sept. 17, 1974.

Certiorari Denied Jan. 27, 1975. See 95 S.Ct. 834.

stance Baker Motley, District Judge, and a jury, Ernest Malizia was convicted on February 15, 1974, of a one-count indictment which charged him with the sale of 995 grams of cocaine in violation of 21 U.S.C. §§ 173 and 174. He was sentenced to ten years imprisonment and a $20,000 fine.

On appeal Malizia raises several errors, the most important of which was the admission of testimony that informant Stanley Gerstenfeld stated that he would not testify because of fear of death, and that Malizia's fingerprints were taken from the files in the office of the Bureau of Narcotics and Dangerous Drugs.

The record reveals that at about 6 P. M. on February 17, 1971, Group Supervisor Leonard Vecchione of the Federal Bureau of Narcotics and Dangerous Drugs (B.N.D.D.) and Investigator Edward Kayner of the New York State Police proceeded to the area of Park Place and Church Street where they met with Stanley Gerstenfeld, the Government's informant, whom they instructed to enter an undercover taxicab driven by State Police Investigator George Gross, to whom Vecchione then delivered a paper bag containing $16,500 in advanced Government funds. Gross and Gerstenfeld proceeded in the taxicab to Christine's Luncheonette at 349 Pleasant Avenue in Manhattan, followed by Vecchione and Kayner in an unmarked police vehicle and by B.N.D.D. Agent John Maltz in a second vehicle.

Bancroft Littlefield, Jr., Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. S.D. N. Y., S. Andrew Schaffer, Asst. U. S. Atty., of counsel), for appellee.

J. Jeffrey Weisenfeld, New York City (Goldberger, Feldman & Breitbart, New York City, on the brief), for defendant-appellant.

Before SMITH and MANSFIELD, Circuit Judges, and BARTELS,* District Judge.

BARTELS, District Judge:

After a three-day trial in the Southern District of New York before Con-

At approximately 9:15 P.M. they arrived in front of Christine's Luncheonette, whereupon Gross handed Gerstenfeld the paper bag containing the $16,500 and Gerstenfeld then exited the cab and entered Christine's. The luncheonette was located below the level of the sidewalk and was enclosed by two large glass windows on both sides of a glass door. A serving counter ran from front to back, perpendicular to the street. Gerstenfeld entered the lunch-

* Of the Eastern District of New York, sitting by designation.

eonette and delivered the bag of money to Malizia who was standing alone behind the counter. Malizia then removed the money from the bag and after thumbing through the bills, came from behind the counter, lifted up the back of Gerstenfeld's three-quarter length leather jacket and stuck a yellowish package inside Gerstenfeld's belt in the small of his back and pulled the jacket down over the package. Gross observed the entire transaction from his taxicab and Vecchione and Kayner who stopped momentarily also witnessed Malizia counting the money. After the sale Gerstenfeld hailed a passing cab which took him to 86th Street and York Avenue where he transferred to Investigator Gross' cab. Gross then drove Gerstenfeld to 89th Street and York Avenue where they met Vecchione and Gerstenfeld delivered to Vecchione the yellowish package, which upon analysis contained 995 grams of cocaine. Ten minutes after Gerstenfeld's departure, Malizia was observed leaving Christine's and proceeding to 118th Street and Pleasant Avenue where he placed a brown paper bag in the trunk of a blue Pontiac registered in the name of Rose Malizia, his sister-in-law.

One week later, on February 24, 1971, agents attempted unsuccessfully to locate and arrest Malizia in New York City and also at his house in Nanuet, New York. They interviewed Malizia's wife and children concerning his whereabouts but without success. They maintained surveillance at Malizia's home on a regular basis for the next two years and also on the homes of his relatives during Christmas and Thanksgiving, all without success.

Malizia was not arrested until December 18, 1973, when he was apprehended in the vicinity of 236th Street and Johnson Avenue in the Bronx, after he had given the false name of Harry Luppes, which was the name on a driver's license found in his possession. This was the second time Malizia had given false identification while he was being sought; the first being when he was arrested for a traffic violation in Rockland County on December 5, 1971. At that time he claimed he was John Conite, the name on a forged driver's license then held by him.

I

We turn first to the most troublesome issue concerning the admission of testimony relative to the state of mind of Stanley Gerstenfeld. Ordinarily one of the most important witnesses called by the Government in a narcotics case is the purchaser. Here the purchaser was not a Government agent but the informant Gerstenfeld, who from the beginning indicated to the Government agents that he would not testify. Nevertheless an exhaustive search was made by the Government for Gerstenfeld without success. After testimony of the search was adduced, the Government stopped and approached the bench for a conference relative to its offer of proof to show that Gerstenfeld had told Vecchione that he would never testify because he was in fear of being killed. Realizing the importance of the testimony of the informant in this case and at the same time the prejudicial effect of the informant's stated reason for failing to appear, Judge Motley, outside of the jury's presence, indicated to the defendant's counsel that if he did not intend to comment adversely on the Government's failure to produce the informant, the testimony as to the reason for the failure of the witness to appear would be excluded. Instead of accepting this suggestion, counsel replied that he would raise the question in his summation in the context of the Government's failure to sustain "its burden of producing all witnesses." Only after defendant's rejection of the suggestion did Judge Motley allow the Government to explain why Gerstenfeld was not produced at the trial[1] on the

---

1. Appellant does not on appeal contest the district court's ruling that the statement was not barred by the hearsay rule "since it was limited to bringing out the informant's

premise that the probative value of the testimony was sufficient to outweigh its prejudicial effect. "Informants in drug cases are not Brahmins, nor are they noted for long-term occupancy of well-tended premises. Their disappearance, voluntary or otherwise, is not extraordinary." United States v. Super, 492 F.2d 319, 322 (2d Cir. 1974).

We have, under cautionary instructions, upheld the testimony of a witness explaining his own prior failure to testify for the Government or his prior contradictory or inconsistent statements because of fear of threatened retaliation. United States v. Place, 263 F.2d 627 (2d Cir.), cert. denied, 360, U.S. 920, 79 S. Ct. 1439, 3 L.Ed.2d 1535 (1959); United States v. Cirillo, 468 F.2d 1233 (2d Cir. 1972), cert. denied, 410 U.S. 989, 93 S. Ct. 1501, 36 L.Ed.2d 188 (1973); United States v. Berger, 433 F.2d 680 (2d Cir. 1970), cert. denied, 401 U.S. 962, 91 S. Ct. 970, 28 L.Ed.2d 246 (1971); United States v. Scandifia, 390 F.2d 244 (2d Cir. 1968), vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). While these cases permit an impeached witness to explain the circumstances concerning his own state of mind, they do not extend to the explanation for the failure of a presumably favorable witness to testify. A much more serious risk of prejudice exists in such a case because the witness is not present to be cross-examined, even though the testimony concerning his state of mind falls within the hearsay exception.

■ Vecchione, while on the stand, testified that Gerstenfeld was not in the custody of the Government, that he was not in any way under the control of the Government, that efforts to locate him were unsuccessful, and that Gerstenfeld had told Vecchione that he would never testify because "he was in fear of being killed." It was a general statement which did not point to Malizia as a potential killer and, in fact, on cross-examination Vecchione testified that Gerstenfeld never told him that he heard that Malizia was trying to kill him and further, that Gerstenfeld had worked for Vecchione in other cases prior to making the purchase from Malizia. Malizia claims that the explanation was unnecessary and that all the Government was entitled to was testimony to show that it had attempted without success to find Gerstenfeld. See United States v. Young, 150 U.S.App.D.C. 98, 463 F.2d 934, 939–940 (1972); Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621, 625 (1967). This, however, may not be sufficient. An adverse inference is likely to arise if a party fails to call a key witness who is expected to give favorable testimony to his cause. "It would present an anomaly in the law if, while one party may comment upon the absence of an opposing party's witness, . . . the opposing party were not permitted to introduce evidence to excuse the absence of such witness." Schumacher v. United States, 216 F.2d 780, 788 (8th Cir. 1954), cert. denied, 348 U.S. 951, 75 S.Ct. 439, 99 L.Ed. 743 (1955). On the other hand, such testimony predicated upon fear of retaliation, is so prejudicial that it should be excluded in the absence of exceptional circumstances.

■ In this case Malizia had an option to exclude the testimony but he rejected that option and chose instead to exploit the absence of the witness, emphasizing upon summation that Gerstenfeld was "not here to tell you what happened." From these exceptional circumstances arose the necessity to anticipatorily rebut the claim that the Government should have produced the witness. While we believe that cautionary instructions would have been advisable in

state of mind" (Tr. 43–44). Frank v. United States, 220 F.2d 559, 564 (10th Cir. 1955); Mattox v. News Syndicate Co., 176 F.2d 897, 903–904 (2d Cir.), cert. denied, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949); see also Case v. New York Central Railroad Co., 329 F.2d 936 (2d Cir. 1964); VII Wigmore, Evidence § 1790 (3d 1940).

this case, we conclude that on balance defendant was treated fairly and that the admission of the prejudicial testimony was not sufficient to warrant a reversal, particularly in view of the overwhelming nature of the evidence by the seven agents who had participated in the surveillance of the sale of February 17, 1971.

■ Malizia next challenges the admission of the testimony of Investigator Kayner to the effect that he brought three fingerprint cards from the Federal Bureau of Narcotics, among which was Malizia's fingerprint, to the State Police Laboratory to compare with a fingerprint located on the innermost plastic bag containing the cocaine sold to the informant. Kayner testified that no prints at all had been readable from the outer two wrappings around the cocaine; that the partial print removed from the innermost plastic bag had been compared with known parts of Malizia's prints but the print on the bag was not Malizia's print. The theory of Malizia's objection is that reference to Malizia's fingerprints from the Bureau of Narcotics carried the implication that he was a narcotics violator. It is well known that the Government has in its files fingerprints of most Government officers and employees as well as those who had ever been in any branch of the military service and those who have voluntarily offered their prints. It would have been sufficient without causing any prejudice had the Government's witness simply testified that the fingerprint cards had been produced from the Government files instead of the Bureau of Narcotics files. However, no card was introduced into evidence and no objection was made to the testimony which, in fact, absolved Malizia, whose counsel exploited the issue on both cross-examination and summation. Cf. United States v. Schwartz, 398 F.2d 464 (7th Cir. 1968), cert. denied, 393 U.S. 1062, 89 S.Ct. 714, 21 L. Ed.2d 705 (1969); United States v. Dichiarinte, 385 F.2d 333, 337 (7th Cir. 1967), cert. denied, 390 U.S. 945, 88 S.

Ct. 1029, 19 L.Ed.2d 1133 (1968). We find no reversible error.

## II

■ Malizia raises three other claims of error, which are of a substantial nature. In connection with establishing proof that Malizia was a fugitive, the Government attempted to show that Malizia was aware of the fact that he was being sought for arrest by introducing evidence that on February 24, 1971 agents stopped an automobile and advised the driver, Malizia's brother John, that they were looking for Malizia. In examining Investigator Gross the prosecutor asked "What brought you to John Malizia exactly?" and he replied "Well, the night of the Operation Flanker—," and when Investigator Pinto was asked what happened on February 24 and 25 he replied that "It was an operation of the federal government called Flanker, . . . ." The reference to the code word "Flanker" was a passing innocuous reference and did not indicate that Malizia was the target of the operation. No objection was made to the use of the phrase and no curative instruction was sought. We find no error. See United States v. Cioffi, 493 F.2d 1111, 1119 (2d Cir. 1974).

■ Malizia also claims error in the admission of evidence of his flight, on the ground that he was not informed personally of the charge and no evidence was introduced as to exactly when he fled. The existence of a warrant or proof of defendant's knowledge that he is being charged with a crime is not a prerequisite to the admissibility of the evidence of flight, United States v. Ayala, 307 F.2d 574 (2d Cir. 1962), and it is also proper to establish flight by showing unsuccessful efforts by the police to locate the defendant. United States v. Waldman, 240 F.2d 449 (2d Cir. 1957); Kanner v. United States, 34 F.2d 863, 866 (7th Cir. 1929). Evidence of flight, like any other circumstantial

evidence, has consistently been admissible as evidence of guilt if considered with other facts of the case. United States v. Ayala, *supra*; United States v. Miles, 468 F.2d 482 (3d Cir. 1972). The evidence here was amply sufficient to be admitted and justified Judge Motley's instructions to the jury on flight, which adequately protected Malizia's rights..

■ Finally, Malizia objects to the trial court's charge as being coercive. He claims that the trial judge gave what he characterizes as an improper Allen charge in the original charge to the jury. In her instructions to the jury the trial judge stated, among other things: "As we have already pointed out, I think Government counsel and defense counsel have, and I will now point it out, that this is an important case to both the Government and defendant, and therefore since it is an important case, it must be decided. You are not to single out any one instruction alone as stating the law, but you have to consider these instructions as a whole." She also stated that the jurors were not to surrender their honest convictions and that the verdict must reflect the conscientious conviction of each and everyone of them. Malizia claims that the statement that the case "must be decided" was coercive. The charge was given at 6:15 P.M. on Friday, February 15, 1974, on the eve of a holiday, and the remark was perhaps a slip better left unsaid. But it was not said after a disagreement or deadlock on the part of the jury but before submission of the case to the jury. Taken into consideration with other portions of the charge, this remark could hardly be deemed coercive. As a matter of fact, the charge as a whole was eminently fair to the defendant. See Nick v. United States, 122 F.2d 660, 674 (8th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941); United States v. McNeil, 140 U.S.App.D.C. 3, 433 F.2d 1109 (1969); United States v. Martinez, 446 F.2d 118, 119 (2d Cir.), cert. denied, 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 259 (1972).

Affirmed.