UNITED STATES of América,
Appellee,

v.

James PINKERMAN, Appellant.

UNITED STATES of America,
Appellee,

v.

Frank MARTIN, Appellant.

Nos. 10867, 10890.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 9, 1967.

Decided March 7, 1967.

Jackson L. Kiser, Martinsville, Va. (Young, Kiser & Frith, Martinsville, Va., on brief), for appellants (Court-appointed in No. 10,890).

Thomas B. Mason, U. S. Atty., for appellee.

Before SOBELOFF, BRYAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

Defendants Pinkerman and Martin were convicted of violations of the Internal Revenue laws of the United States in a jury trial. Pinkerman was charged in a three-count indictment with unlawful possession, custody and control of an unregistered still in violation of 26 U.S.C. §§ 5179(a) and 5601(a) (1) (1964), carrying on the business of a distiller without posting bond in violation of 26 U.S.C. §§ 5601(a) (4) and 5173(a) (1964), and conspiracy to violate the Internal Revenue laws pertaining to distilled spirits in violation of 18 U.S.C. § 371 (1964). He was convicted on all three counts. Martin was charged with and convicted of conspiracy to violate the Internal Revenue laws pertaining to distilled spirits. The United States district court entered judgment upon the verdicts, sentencing Pinkerman to imprisonment for a three-year term and Martin to imprisonment for a one-year term.

Pinkerman, who was 77 at the time of trial, had for more than 50 years been a breeder of game chickens used for cockfighting. He subleased from one John Welch some chicken coops and sheds located on the William T. (Tom) Blackwell farm in Campbell County, Virginia. Also on the farm was a barn which was located in the vicinity of the coops and which housed an unregistered still. There is no evidence that the barn was among those parts of the premises that Pinkerman subleased. On March 31, 1966, several special investigators of the Alcohol and Tobacco Tax Division of the United States Treasury Department raided the barn pursuant to a search warrant that had been procured three days earlier, discovered the still, and arrested Pinkerman, who was found inside the barn standing over a stack of cardboard cases. The agent testified that he appeared to be in the process of closing the flaps of one of the cases. Pinkerman contended that he had nothing to do with the still and that he and his employee, defendant Martin, were present on the premises only for the purpose of caring for his 26 chickens housed in the rented coops. He contended that he had entered the barn in order to ascertain whether or not it contained a water spigot which could be used to supply water to the chicken coops. He testified that he was among the cardboard cases at the time of the raid because he realized that he was in a place where he should not be and was attempting to hide. That Pinkerman was actually engaged in raising chickens on the farm is not seriously disputed.

The defendants on appeal assert that the district court erred in three respects: (1) the district court failed to find the search warrant illegal and hence erroneously admitted evidence obtained as a result of the raid; (2) the court allowed the prosecuting attorney to alert the jury to the fact that Pinkerman had made a statement at the time of his arrest; and (3) the court failed to strike the possession charge against Pinkerman even though the only evidence supporting the charge was the fact of Pinkerman's presence at the still site.

■ Protection against unreasonable searches and seizures, those not based upon probable cause, is guaranteed by the fourth amendment of the United States Constitution. A search warrant may be issued only on the basis of an affidavit that sufficiently states probable cause for the necessity of the search. Fed.R.Crim.P. 41(c); Baysden v. United States, 271 F.2d 325 (4 Cir. 1959). It is not sufficient for the affiant merely to state summarily that he has probable cause to believe that there are reasonable grounds for the search. He must state underlying facts which substantiate his conclusion. See Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct.

1509, 12 L.Ed.2d 723 (1964). The United States Supreme Court in its most recent pronouncement on the subject has made it clear, however, that the requirements of the fourth amendment are "practical and not abstract" and that courts should not interpret affidavits for search warrants in a "hypertechnical" manner. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In *Ventresca*, the Court said:

> "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> "* * * [T]he courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 108–109, 85 S.Ct. at 746.

■ An application of the principles laid down by the Court in *Ventresca* to the search warrant in the case at bar leads us to conclude that the warrant meets the constitutional requirement that it be based on probable cause. The substantive portion of the affidavit on which the warrant is based follows:

> "On March 23, 1966, at approximately 9:05 P.M., I observed a 1948 Chevrolet Panel truck, green in color, headed north on U. S. Route 29, in Altavista, Va. I recognized this vehicle as one owned by Joe Hill, RFD Axton, Va., a person having a reputation with me as a liquor law violator. I followed this vehicle North on Rt. 29 but lost sight of it somewhere in the vicinity of the William T. Blackwell farm on U. S. Route 29 north of Altavista, Va. Through the rear windows of the vehicle I saw the tops of 2 barrels.
>
> "On March 26, 1966, I received information, by telephone, from A&TT Special Investigator Raymond Reynolds, Martinsville, Virginia, who said he had been told by an Informer that James Pinkerman, George Eskew, Mose Martin and others had an unregistered distillery set up on "Tom" Blackwell's chicken farm south of Lynchburg, Va.
>
> "On March 26, 1966, at approximately 8:40 P.M., I observed a white male, similar in appearance to James Pinkerman, come out of the back door of William T. "Tom" Blackwell's residence and walk to a group of outbuildings about 100 yards in the rear of the residence. About 5 minutes later I observed a colored male moving around the outbuildings.
>
> "At approximately 9:00 P.M., I received a radio message from Special Investigator Woodward A&TT, that a green Chevrolet Panel truck has just left Blackwell's and headed south on U. S. Route 29. Shortly thereafter I was in an open untended field to the rear of the outbuildings. I could smell the odor of mash and another odor similar to that of a fuel oil burner coming from the direction of the outbuildings.
>
> "Later on this date I received a radio message from Special Investigator Raymond Reynolds that at approximately 10:45 P.M., a panel truck similar in description to the one above arrived at James Pinkerman's residence at RFD Axton, Va., then went to the residence of George Eskew, Rt. 1, Axton, Va."

■ The defendants' argument is, in effect, that since no one of the paragraphs of the affidavit is in itself sufficient to support a finding of probable cause, the entire affidavit is insufficient. While we may well agree that no single paragraph of the affidavit would support the warrant, we cannot agree that this vitiates the adequacy of the affidavit as a whole. We do not quarrel with the axiom invoked by defendants that "the whole cannot exceed the sum of its parts," but we do challenge the logic of the corollary, which the defendants have implicitly proffered, that the whole cannot exceed any of its parts.

The affidavit in question contains the statement of the affiant, an Alcohol and Tobacco Tax Division special investigator, that he smelled "the odor of mash and another odor similar to that of a fuel oil burner coming from the direction of the outbuildings." Presence of the odor of mash unquestionably constitutes strong evidence of the existence of probable cause. See Ventresca v. United States, supra. Cf. United States v. Mullin, 329 F.2d 295 (4 Cir. 1964). In addition the affiant states that a truck owned by "a person having a reputation with me as a liquor law violator" and containing barrels made a trip to the farm and back to Pinkerman's house. The affidavit also contains information from "an Informer" that there was an unregistered distillery at the farm. While information from an unknown informer whose reliability is not attested to by a recitation of "underlying circumstances" showing him worthy of belief is clearly not sufficient in itself to sustain the validity of a search warrant, Aguilar v. State of Texas, supra, we think it can be considered as supporting evidence of probable cause here, especially in view of the fact that its veracity is corroborated by other facts contained in the affidavit.

■ The defendants' second contention is that the colloquy between the court and counsel regarding a statement made by Pinkerman to a federal agent at the time of his arrest [1] was prejudicial

1. The colloquy took place during the prosecuting attorney's direct examination of Special Investigator Woodward:

"Q. At that point did he make any comments in your presence?

"MR. KISER: I object. I would like to be heard in chambers, if Your Honor please.

"THE COURT: Did you advise him that he was entitled to a lawyer?

"THE WITNESS: No, sir. I did not intend to question Mr. Pinkerman and I did not.

"MR. MASON: And you asked him no questions.

"THE WITNESS: No, sir.

"THE COURT: Have you addressed another question to this witness? Is there another question pending?

"MR. MASON: I believe there is. I can ask it at this time—I may be repeating myself.

"THE COURT: All right.

"MR. MASON: Did Mr. Pinkerman under those circumstances and at that time make any comment in your presence?

"THE WITNESS: Yes, sir.

"MR. KISER: Objection to any comment.

"THE COURT: What is the basis of your objection?

"MR. KISER: United States v. Miranda and Miranda v. The State of Arizona.

"THE COURT: But he was not interrogated.

"MR. KISER: It is our position this applies to volunteered as well as questioned testimony.

"MR. MASON: I don't believe the case so held.

"MR. KISER: I would prefer to retire to chambers if the Court does require argument.

"THE COURT: I am going to sustain the objection. *Miranda* goes so far and it certainly requires the advice as to the defendant being entitled to a lawyer and I am going to sustain the objection.

"MR. MASON: I feel like Mr. Kiser —I have given this considerable thought and would like to be heard further unless the Court has made a final ruling.

"THE COURT: No, I haven't, but can't you go to something else and get to that about time for lunch recess?

"MR. MASON: Yes, sir, I think so."

because the jury could well have received the impression that Pinkerman had in fact made some sort of confession or incriminating statement and that he was not being candid and was attempting to hide something. For the reasons stated in our recent decision in Moorer v. South Carolina, 4 Cir., 368 F.2d 458, we agree with the defendants. Although the statement itself was never revealed to the jury, the discussion of its existence could have impressed the jury in a manner prejudicial to the defendants.

The district court was not taken by surprise with regard to the existence of the statement or defendants' objection to its admissibility. Before trial began, counsel for the defendants told the court in chambers that he opposed the admission of the statement on the ground that Pinkerman had not been warned of his right to counsel as required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and requested that the prosecuting attorney not be allowed to mention the existence of such a statement during his opening statement. The court agreed that the statement should not be mentioned in the prosecuting attorney's opening statement, but stated that he did not think a decision on the applicability of *Miranda* could be made at that time.[2] During the exchange complained of, however, the court allowed the prosecuting attorney to do the very thing that the defense attorney had sought to prevent. Moreover, the district court never clarified the matter for the jury by notifying them of his final ruling made in chambers that the statement was inadmissible under *Miranda;* nor was the jury given any cautionary instructions. At the very least, the district court should have granted immediately the request of defendants' counsel to be heard in chambers when the statement was first mentioned in the presence of the jury. The better practice would have been for the court to determine in chambers prior to trial the admissibility of any statements made by the defendants which the prosecution intended to offer into evidence.

Since Martin, an illiterate Negro, was employed by Pinkerman and acted entirely under his supervision, it is agreed that he and Pinkerman stand in the same position in this appeal except as to the contention that the evidence was insufficient to convict Pinkerman of possession, custody and control of an unregistered still. We therefore grant new trials for both Pinkerman and Martin because we have concluded that the discussion concerning Pinkerman's statement was prejudicial to both.

Defendant Pinkerman contends that his conviction of unlawful possession, custody and control of an unregistered still cannot stand because the only

2. "Mr. KISER: If the Court please, at the Court's direction and through Mr. Mason's willingness we have been furnished with letters setting forth the verbal statements made by our clients at about the time of arrest. Now, it is very possible that Mr. Mason in his opening statement is going to comment on these admissions, and we think in view of the recent case of Miranda v. The State of Arizona there might be some right sharp question as to the admissibility of these statements and we would like the Court to restrict the United States Attorney in his opening statement to a general statement where these admissions would not be mentioned until such time as the Court can rule on the admissibility of this evidence. "THE COURT: What about that, Mr. Mason?

"MR. MASON: I had planned to state that certain incriminating statements were made without going into what the statements were and let the evidence show that. "THE COURT: I believe it would be better not to do that. "MR. MASON: All right, sir. "THE COURT: I don't know—I was interested to see what you said in your letters, and I am not unaware of *Miranda.* Whether they come within that rule or not I am not prepared to say and I don't think we can in here, but in the event objections should be made and sustained it would be much better that they not have been mentioned. I don't think it is necessary in opening statement. "MR. MASON: All right."

evidence to support it was his presence at the still site. Since Pinkerman received a consolidated sentence for all three convictions, we reach this question only because we have granted a new trial on other grounds. We have examined the record carefully and have determined that the evidence contained in the record will not support the conviction for unlawful possession. Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947). The district court is directed to enter a judgment of acquittal for Pinkerman on the unlawful possession count of the indictment.

The cases are remanded for a new trial.

Remanded.