**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Richard NIELSEN, Defendant-Appellant.**

**No. 16176.**

United States Court of Appeals Seventh Circuit.

Jan. 30, 1968.

Rehearing Denied April 16, 1968.

Richard B. Caifano, Jo-Anne F. Wolfson, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Mark W. Perrin, Special Asst. U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel.

Before SWYGERT, FAIRCHILD, and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

Richard Nielsen was charged with aiding and abetting the transportation in interstate commerce of a stolen motor vehicle which he knew was stolen, in violation of 18 U.S.C. §§ 2, 2312. After a jury found the defendant guilty, he was sentenced to five years in prison.

During a two-day period beginning September 9, 1966, Federal Bureau of Investigation agents kept a garage, located in DuPage County, Illinois, under surveillance. This garage had been leased to the defendant who ostensibly operated an automobile repair and salvage business there. The agents observed a gold and black 1966 Chevelle (Chevrolet) automobile outside the garage when they began their surveillance. Soon thereafter the defendant drove the car into the garage, reappeared, and removed a set of license plates from the trunk of his own car. The next afternoon an agent saw the defendant drive the Chevelle from the garage with the license plates which he had removed from his own car the previous day. He followed the defendant but momentarily lost sight of the Chevelle in traffic. When the agent again observed the car, it was parked in a Westmont, Illinois restaurant parking lot several miles from the defendant's garage.

While the agent kept the car under observation, he noticed a man whom he recognized as Jarvis P. Suit and knew as an admitted car thief enter the car and drive away. The agent followed Suit into Hammond, Indiana where he stopped him. An examination of the Chevelle disclosed that although the vehicle identification tag matched the secondary identification number on the frame, the latter showed evidence of alteration. Subsequent investigation revealed that the Chevelle was in fact stolen,[1] that the vehicle identification tag found on the car had the same serial number as that appearing on the title of a wrecked car, and that the secondary number had been impressed on the frame by means of stamps seized from the defendant's garage on the day of his arrest.

At approximately 1 a. m. on October 7, 1966, the defendant was arrested in his home in Lisle, Illinois. The arresting F.B.I. agent testified before the jury that he warned the defendant while still at his home of his rights to remain silent and to have the assistance of counsel (as required by the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The agent further testified that he again warned the defendant of these rights when they reached the F.B.I. office and that the defendant himself read a statement of these rights which were contained in a "waiver of rights" form.[2] According to the agent, the defendant then said: "I am not going to sign this document. I have an attorney, * * * and I am not signing anything, including this form, until I have occasion to talk to Mr. Wolfson." The agent testified that he then offered to let the defendant call his attorney, but the defendant declined, saying, "it could wait until later on in the morning." The agent continued, "He said, however, that we could proceed with the questioning." Following this statement, the agent said that he asked the defendant five questions concerning his knowledge about J. P. Suit and the car. To all questions, the defendant gave negative answers.

During the trial, the Government argued that the defendant's denials in response to the F.B.I. agent's questions were false, and the district judge in his charge told the jury that they might consider whether the evidence of the defendant's denial indicated a consciousness of guilt on his part. The defendant did not testify in his own behalf at the trial.

Even though the record indicates that the F.B.I. agent warned the defendant of his rights as required by *Miranda*, the agent's testimony gives rise to the distinct probability that the defendant's constitutional rights not only were prejudiced by the agent's testimony during the trial but also were violated by the agent's conduct during the interrogation.

In *Miranda*, Chief Justice Warren wrote:

> In accord with our decision today, it is impermissible to penalize an indi-

---

1. The car was positively identified by its rightful owner who reported the theft to Chicago police.

2. The form read by the defendant, which he refused to sign, was admitted into evidence as an exhibit.

vidual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. Cf. Griffin v. State of California, 380 U.S. 609, [85 S.Ct. 1229, 14 L.Ed.2d 106] (1965); * * * Miranda v. State of Arizona, supra at 468 N. 37, 86 S.Ct. at 1625.

Griffin v. State of California pertained to an instruction in a state criminal prosecution allowing the jury to draw unfavorable inferences from the defendant's failure to testify about matters within his own knowledge. The Court reversed, saying, "The Fifth Amendment * * * forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. State of California, supra at 380 U.S. 615, 85 S.Ct. at 1233. Cf. United States v. Krol, 374 F.2d 776, 779 (7th Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97 (1967).

Both in *Miranda* and *Griffin* the Supreme Court made it unmistakably clear that an accused's exercise of his fifth amendment right to remain silent ought not yield a "penalty * * * for exercising a constitutional privilege." Griffin v. State of California, supra 380 U.S. at 614, 85 S.Ct. at 1233. When a defendant's exercise of his constitutional right to remain silent during either interrogation or trial is the subject of testimony or comment, the possibility that the jury might draw prejudicial inferences therefrom is the penalty to which he is exposed. We believe that the same likelihood of prejudice inherent in the foregoing situation could also be present where there is testimony, as in this case, that a defendant initially refused to say anything but subsequently spoke.

To avoid the possibility of thus penalizing an accused for an exercise of his constitutional rights, we hold that whenever a defendant, by appropriate objection to proffered testimony concerning his statements made during custodial interrogation, contends that those statements were made in the absence of a knowing and intelligent waiver of his rights to remain silent and consult an attorney, the court must excuse the jury and conduct a *voir dire* hearing to resolve the issue. Cf. Jackson v. Denno, 378 U.S. 366, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). See, Tucker v. United States, 375 F.2d 363 (8th Cir. 1967); Evans v. United States, 375 F.2d 355 (8th Cir. 1967); Pinkerman v. United States, 374 F.2d 988 (4th Cir. 1967). A *voir dire* hearing would prevent the jury from drawing prejudicial inferences by reason of testimony that the defendant sought to exercise his constitutional rights. In addition, such a hearing would enable the defendant to testify on the issue of waiver without relinquishing his privilege to remain silent at the trial. Finally, this procedure enables the court to make a fully informed determination on the question of the admissibility of the defendant's custodial statements. Because the procedure followed in the instant case was not compatible with protecting the defendant in the exercise of his constitutional rights, prejudicial error occurred.

According to the testimony of the F.B.I. agent, the defendant, after being warned of his right to remain silent and the consequences of speaking, said he had a retained attorney and would not sign a waiver of rights form or "anything" until he talked to his attorney. At this point, the agent asked the defendant if he wanted to call his attorney. The defendant replied that he would wait to call until later in the morning but that "they" could continue questioning him. Resumption of questioning by the agent resulted in the defendant responding to five questions in the negative.

In *Miranda,* the Supreme Court indicated that the fact that a person was properly warned of his rights does not inevitably lead to the conclusion that

his subsequent statements were obtained without violating those rights.

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. * * * If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda v. State of Arizona, supra 384 U.S. at 473, 474, 475, 86 S.Ct. at 1627, 1628.

■ There can be no question that when the defendant in the instant case refused to sign anything until he saw his attorney, he indicated a desire to remain "silent." Since the interrogation continued beyond that point, the Government had a "heavy burden" to show that the subsequent interrogation of the defendant took place after he "knowingly and intelligently" waived his Miranda rights. We do not believe that the Government satisfied this burden.

■■ As we recently said in United States v. Smith, 379 F.2d 628, 633 (7th Cir. 1967), a case discussing the thrust of the Miranda rules, there must be a clear showing "after known retainer * * * of counsel * * * that the accused deliberately and understandingly chose to forego the assistance of counsel at such interrogation." Here the defendant's refusal to sign the waiver form, followed by an apparent willingness to allow further questioning, should have alerted the agents that he was assuming seemingly contradictory positions with respect to his submission to interrogation. Instead of accepting the defendant's equivocal invitation, the agents should have inquired further of him before continuing the questioning to determine whether his apparent change of position was the product of intelligence and understanding or of ignorance and confusion. However, no further inquiry took place. In the absence of such an inquiry, we are compelled to conclude that the defendant's negative responses to the questions asked him were not made after a knowing and intelligent waiver of his rights. Consequently, the trial court erred in admitting the testimony of the subsequent interrogation.[3]

The defendant's remaining contentions concern a claim of error in requiring defense counsel to request, receive, and inspect Jencks Act[4] statements in the presence of the jury, a claim that the evidence was insufficient to support the conviction, and a claim that the court improperly refused to instruct the jury on the defendant's theory of the case and proposed defense.

Prior to the cross-examination of one of the F.B.I. agents, defense counsel made a request to be heard outside the presence of the jury. The court refused the request, after which defense counsel moved for the production of Jencks Act statements. This motion was granted. Defense counsel then objected to the manner of tendering the statements and again requested to be heard outside the presence of the jury. The court overruled the objection and denied the request. The statements were tendered and a request by defense counsel to read them over was granted.

Reliance is placed on Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966) to support the contention that reversible error resulted in the instant case when the trial court required the Jencks Act statements to be requested, tendered, and received in the presence of the jury. Gregory established a rule for the District of Columbia Circuit under which a request for and the receipt of Jencks Act statements must take place

---

**3.** In addition to the claimed violation of his rights under Miranda, the defendant also contends that the court's instruction on his custodial statements constituted prejudicial error. Since these statements were inadmissible, any instruction in regard to them was improper as well.

**4.** 18 U.S.C. § 3500.

outside the presence of the jury. Subsequently, the Second Circuit, in United States v. Gardin, 382 F.2d 601, 605 (2d Cir. 1967), refused to follow the "hard and fast" rule laid down in *Gregory*. Although recognizing "that the fair and just administration of criminal prosecutions might well be better served if the proceeding for the production of Jencks Act statements * * * were to take place out of the presence of the jury when the defendant requests that this be done," the Second Circuit left "the procedure to be followed * * * to the discretion of the trial judge."

■■ Generally, we believe that the request, tendering, receipt, and inspection of Jencks Act statements should take place outside the presence of the jury, if counsel so requests. We are incapable, however, of envisioning every situation relating to the production of Jencks Act statements. Consequently, instead of establishing an inflexible rule to be followed in every future case, we leave the manner of proceeding in such situations to the sound discretion of the trial judge. In the instant case, we are unable to perceive any prejudice to the defendant because of the procedure followed, inasmuch as his counsel conducted a vigorous cross-examination after receiving the Jencks Act statements.

Upon considering the defendant's other contentions, we conclude that they are without substance.

The judgment of conviction is reversed, and the case is remanded for a new trial.

CUMMINGS, Circuit Judge (dissenting).

Here Federal Bureau of Investigation Agent Daniel V. Hogan properly advised defendant Nielsen of his constitutional rights in conformity with Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. As Hogan testified:[1]

"* * * * I personally advised him of his constitutional rights. That is, after identifying ourselves [Hogan and Agent Stephan] with our credentials, I told him of the nature of the charge against him. I also told him that he had certain rights guaranteed by the constitution; namely, that he need not say anything if he so desired. But that anything he did care to say could be used as evidence against him in a court of law; that he had the right to the counsel of an attorney. He could talk to this person or anyone of his choice before he said anything if, in fact, he cared to say anything. And if he lacked the necessary funds with which to retain an attorney, then that matter could be disposed of at the time he appeared before the United States Commissioner and one would be appointed for him. I orally advised him of this in his residence."

Thereafter, at FBI headquarters in Chicago, having been again apprised of his rights through the waiver form, Nielsen told Hogan that he did not want to call his lawyer until later in the morning and then "He [Nielsen] said however, that we [Hogan and Stephan] could proceed with the questioning." Hogan then proceeded to relate Nielsen's denials of having: driven the stolen Chevelle, been in it, seen it, been involved in altering its frame identifying numbers or known J. P. Suit (an Alabama auto dealer who was in possession of the Chevelle when it was recovered). There was no objection to Hogan's testimony as to Nielsen's five denials nor any motion to strike it. Defendant did not complain that the *Miranda* warnings were repeated in the jury's presence, and his briefs do not

1. Just beforehand, defense counsel objected to the relevancy of Hogan's testifying about advising Nielsen of his constitutional rights, but the objection was overruled.

argue that the jury should have been excluded.[2]

There is no claim that Nielsen did not understand his constitutional rights or that his decision to talk was based on misinformation or deception by the Government. Defendant has not advised us what else could have been done by Agent Hogan to insure that Nielsen's decision to talk was voluntary. According to Hogan's uncontroverted testimony, Nielsen plainly "chose to forego the assistance of counsel" at the interrogation. United States v. Smith, 379 F.2d 628, 633 (7th Cir. 1967).[3] Hogan's above-quoted testimony convinces me and convinced the District Court that this was done deliberately and understandingly after adequate constitutional warnings. In my view, this case is controlled by United States v. Plata, 361 F.2d 958, 961 (7th Cir. 1966), certiorari denied, 385 U.S. 841, 87 S.Ct. 94, 17 L.Ed.2d 74,[4] where Judge Major stated:

> "As previously shown, defendant had been advised of his constitutional rights, and particularly that any statement he made might be used against him. It is true he had stated that he desired to consult the lawyer who had represented him in business, and admittedly two unsuccessful attempts had been made to reach him by telephone. No request was made that any other lawyer be contacted. We think the inference is inescapable that defendant, with knowledge of his right to counsel and to remain silent if he so desired, voluntarily responded to the agent's inquiry."

The judgment of the District Court should be affirmed.

**2.** If defendant had objected to the adequacy of the warnings or to Hogan's recitation of Nielsen's false exculpatory statements, the District Court could have resolved the matter outside the jury's presence (Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908), making specific findings as to the sufficiency of the *Miranda* warnings and de-

fendant's waiver. Evans v. United States, 375 F.2d 355, 360 (8th Cir. 1967). No such findings were requested here.

**3.** The *Smith* case was decided after this trial.

**4.** *Miranda* was cited in Plata's unsuccessful petitions for rehearing and for certiorari.