**UNITED STATES of America, Plaintiff,**

v.

**Sawaddi CHANSRIHARAJ a/k/a "Sawat Nawbhanich" and Kenji Suzuki, Defendants.**

No. 77 Crim. 0813 (PNL).

United States District Court, S. D. New York.

Feb. 16, 1978.

Louis R. Aidala, New York City, for defendant, Kenji Suzuki.

Robert B. Fiske, Jr., U. S. Atty., by Jane W. Parver, Asst. U. S. Atty., New York City, for U. S.

## MEMORANDUM OPINION

LEVAL, District Judge.

The defendant's motion to suppress his statements made in response to questions of an Assistant United States Attorney raises a difficult question as to the government's discharge of its obligations under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The issue (not infrequently encountered by prosecutors) is what to do when a defendant, upon being advised of his right to have a lawyer present at the interview, makes an ambiguous or unclear answer which neither asserts the desire to avail himself of the right nor clearly waives it. Further inquiry may well be required to clarify the defendant's understanding and his wishes. I find that what was done here was insufficient.

Agents of the Drug Enforcement Administration arrested Kenji Suzuki, a Japanese national, in his hotel room in the afternoon of Sunday November 6, 1977, with more than sufficient probable cause to believe that he had recently delivered a kilo of heroin to the now cooperating Thai co-defendant and was prepared to deliver more. An agent asked Suzuki whether he understood English. He answered in the affirmative. The question was repeated and again answered affirmatively. Then, reading from a Justice Department card, the agent went through the *Miranda* rights slowly, pausing after each one and obtaining the defendant's acknowledgement that he understood it. Having completed the advice, he asked Suzuki, "Do you want to talk to me?", and received an affirmative answer.

Suzuki answered the agents' questions in a manner which he thought exculpatory, since he denied awareness that the substance in his possession was narcotic, but which also was seriously inculpatory in that he acknowledged having imported "powder" for a Thai "kickboxer" and having delivered it, as instructed, to the Thai co-defendant in New York.

The defendant was lodged over Sunday night in the Metropolitan Correctional Center. The next morning, prior to arraignment, he was brought to the office of an Assistant U.S. Attorney. A Japanese interpreter was present. The Assistant, through the interpreter who was instructed to translate verbatim, began by advising the defendant of his rights. Reading from a mimeographed U.S. government form, the Assistant stated each right and asked if the defendant understood.

The problem arose when, in response to the inquiry whether he understood his right to have an attorney present during the interview, the defendant stated, "I have a friend Mr. Mori who is trying to arrange a lawyer." The Assistant then repeated verbatim from the form, "You have a right to consult an attorney and to have that attorney present during this interview. Do you understand that now?" The defendant answered "Yes" and the interview proceeded. The Assistant asked if the defendant wished to answer questions about his background, informing him that he could stop at any time. He agreed to do so. Considerably later in the interview, the Assistant asked, "Would you like to tell me what happened?" Suzuki then made further partially exculpatory and partially incriminating admissions, in response to questions.

The government concedes that, had Suzuki stated that he wished to consult an attorney, further interrogation would have

been barred. It contends, however, that, since Suzuki understood his rights and nonetheless agreed to answer, he must be deemed to have waived his right. Alternatively, it argues that this instance is governed by a line of cases in which subsequently *volunteered* statements have been admitted despite clear prior assertions of intent to consult counsel.

█ The issue here cannot be whether the defendant volunteered or was prepared to volunteer any information, because he was not given such an opportunity. The questioning continued after his ambiguous assertion, and he spoke only in answer to questions. The crucial difference between these facts and the cases on which the government relies is that in the cited cases the government stopped all substantive questioning upon the defendant's invocation of *Miranda* rights and played no role in procuring the admissions subsequently made. For example, in *Cobbs v. Robinson*, 528 F.2d 1331, 1342 (2nd Cir. 1975), *cert. denied*, 424 U.S. 1947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976), "[t]here was no evidence of any attempt at an interrogation." To the contrary "a police officer advised [the defendant] that no statement from him was needed because they already had sufficient evidence." He was offered a telephone to call his lawyer; instead he called his grandmother who came to the police station, spoke to him in private and convinced him to tell the police the facts, which he did without a question on their part.

Similarly, in *United States v. Kaylor*, 491 F.2d 1127 (2nd Cir. 1973), *vacated and remanded on other grounds*, 418 U.S. 909, 94 S.Ct. 3201, 41 L.Ed.2d 1155 (1974), *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), and *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973), the admitted statements were volunteered and were not made in response to government questioning.

█ As to the government's first contention, although it is true that the defendant need not make an express waiver of *Miranda* rights and that such a waiver may be inferred from the defendant's conduct and responses, I cannot draw such an infer-ence from this interview following the defendant's ambiguous assertion.

On the other hand, I do not find that the defendant's statement amounted to an "indicat[ion] in any manner . . . that he wishe[d] to consult with an attorney before speaking" which under *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1613, would have required termination of the questioning. The significance of his remark that a friend was trying to get him a lawyer was unclear. It was all the more unclear in view of the fact that the interview was being relayed through a Japanese interpreter, which might have resulted in loss or distortion of nuances. It was not clear, for example, whether the lawyer was being sought for help at such an interrogation, or only for court proceedings. Nor could the Assistant have known at the time whether the friend had already succeeded in retaining an attorney, so that the defendant, although ignorant of the fact, was already represented. That fact, if true, might have altered the picture as to satisfactory demonstration of waiver. See *United States v. Nielsen*, 392 F.2d 849, 853 (7th Cir. 1968). Compare *People v. Taylor*, 27 N.Y.2d 327, 318 N.Y.S.2d 1, 266 N.E.2d 630 (1971).

I find that the defendant's remark was of the type referred to in *United States v. Riggs*, 537 F.2d 1219, 1222 (4th Cir. 1976), which "arguably amounts to" or may indicate an intended "assertion of . . . *Miranda* rights," which should cause the investigator, at least temporarily, to cease questioning as to the crime and to "inquire of the suspect as to the correct interpretation of the statement."

█ Suzuki's statement did not require termination of the interview. What was called for was some form of inquiry designed to clarify the defendant's intentions. After the defendant's ambiguous remarks, only with the help of such a clarification could the government sustain its burden under *Miranda* of showing waiver. What the Assistant did instead of seeking clarification was simply to reiterate the nature of the right and ask again whether Suzuki

understood it. I cannot find on that record a satisfactory demonstration of waiver and accordingly suppress the interview. Cf. *United States v. Nielsen, supra.** 

 Insofar as the motion to suppress relates to the statements taken on the previous day at the defendant's hotel room, the motion is denied. The warning and advice given by the agents was thorough, slow and satisfactory. It is true no Japanese interpreter was present, but no proof was submitted contesting Suzuki's ability to understand English sufficiently. To the contrary, the proof showed that Suzuki had sufficient English comprehension to understand what was said to him by the agents, and did understand it.

He is a literate and sophisticated man, a free-lance journalist for Japanese sports publications. He was in the United States to cover a racing event in Washington, D.C. where he had gone the previous day, and he conversed with the agents in English on the subject of that race. He is a frequent traveler to the United States, having made four trips here in 1974, two in 1975, two in 1976 and one in 1977. The evidence showed that he conducted important dealings with the Thai co-defendant in the English language. Having listened to the tape of an English language telephone conversation between Suzuki and the Thai co-defendant, it is my opinion that if he could understand the Thai's English, he could understand the agent's English. More importantly, the agents carried on a conversation with him on several different subjects, always in English, and found that, except when he professed bewilderment as to the meaning of such words as "heroin," "morphine" and "narcotics," he answered on all other subjects responsively.

---

* If the Eighth Circuit's view as expressed in *United States v. Marchildon*, 519 F.2d 337 (1975), is to the contrary, I decline to follow it.