**LeRoy LaROCHE, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

No. 78–2491.

United States Court of Appeals, Fifth Circuit.

July 30, 1979.

I. Paul Mandelkern, Orlando, Fla. (Court-appointed), for petitioner-appellant.

Benedict P. Kuehne, West Palm Beach, Fla., for respondent-appellee.

Before THORNBERRY, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

LeRoy LaRoche appeals from the denial of his petition for habeas corpus. He raises three points of error regarding his 1972 Florida trial for rape of a college student. The first two deal with the court's procedures in admitting an in-custody statement in which LaRoche had denied being on the beach where the rape occurred, a denial at odds with his trial testimony. The final asserted error regards his wife's testimony about her intercourse with petitioner on the day of the rape, evidence again at odds with his trial testimony and also tending to explain the lack of medical evidence that the complainant was raped. Finding no merit in his various challenges to the evidence, we affirm.

The first alleged error occurred when, during the state's case in chief, the prosecutor attempted to introduce appellant's post-arrest denial of presence on the beach. The prosecutor began by asking one of the arresting officers whether LaRoche had been informed of his constitutional rights and whether he had understood them. After the officer responded affirmatively to these two questions and was about to relate the question LaRoche had been asked, defense counsel objected, referring back to earlier objections raised by a motion in limine. The court ruled that the officer could continue. After repeating the testimony that LaRoche acknowledged understanding his constitutional rights, the officer related the question he had put to LaRoche: whether he had been on the beach that evening. Before the officer could recount LaRoche's response, defense counsel objected again and asked that the jury be removed during a determination whether LaRoche had waived his rights. The judge refused to remove the jury but allowed the attorney some voir dire that tended to cast doubt on whether LaRoche had waived his rights. After discussion at the bench, the judge suppressed LaRoche's statement, commenting, however, that it could be used for rebuttal. The defense reiterated that even the necessary requirements for rebuttal use

had not been shown. No cautionary instruction was asked for or given regarding what the jury had heard; no mistrial was requested.

■ LaRoche argues that the court's procedure violated his right to a *Jackson v. Denno*[1] inquiry into the voluntariness of his statement, to be held outside the jury's presence. The state responds with two procedural points: LaRoche is barred from federal collateral relief because he waived the issue both by failing to ask for a mistrial and by failing to raise the issue on direct appeal. In addition, it argues on the merits that the error was harmless. We need not reach the state's procedural arguments because they have been waived here by the failure to raise them, either in the first federal habeas proceeding that was dismissed for failure to exhaust state remedies or in the second habeas proceeding below, after LaRoche had been denied relief by state courts. *Houston v. Estelle*, 569 F.2d 372, 375 (5th Cir. 1978). Reaching the merits of LaRoche's *Denno* argument, therefore, we hold that the trial court's procedure, while patently unreasonable in a trial held some seven years after the Supreme Court had determined the applicable constitutional standards, was nevertheless harmless. As observed below, the in-court hearing was brief, limited, and disclosed nothing prejudicial to LaRoche. Though there is an outside chance the jury might have drawn adverse inferences from watching LaRoche's attorney attempt to suppress the statement on what might have seemed a "technicality," no concrete prejudice has been alleged or demonstrated by LaRoche. In view of the forceful and detailed testimony of the complainant, corroborated by a witness who happened upon the distraught woman after hearing a scream, and by a police officer who detected two large areas of signs of a struggle in the sand, the case against LaRoche was strong. Moreover, the later revelation of the suppressed statement, satisfying any curiosity the jurors might have felt, is an additional factor lessening the sting of the earlier defect.

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

LaRoche's second issue is related to the first. After the state rested its case, La-Roche took the stand and testified elaborately that he had indeed attempted consensual intercourse with the complainant, that he had trouble attaining an erection because he had been drinking all day and therefore failed to penetrate her, and finally that he ceased attempts to do so as soon as she indicated an unwillingness to continue. When the state began to rebut this story by introducing LaRoche's post-arrest denial that he had been to the beach, defense counsel again objected that LaRoche had not been properly apprised of his rights. The request for a *Denno* hearing was not renewed, however, and the judge simply overruled the objections in light of precedent allowing impeachment use of statements made without proper *Miranda* warnings.

■ The federal court below ruled that, in light of the earlier objections, counsel's later comments were sufficient to preserve the constitutional issue of whether LaRoche's statement had been voluntary. *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Oregon v. Hass*, 420 U.S. 714, 722, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), require that for valid impeachment use of statements made without proper warnings, legal standards of "trustworthiness" must be satisfied. More specifically, *Mincey v. Arizona*, 437 U.S. 385, 397, 398, 98 S.Ct. 2408, 2416, 2417, 57 L.Ed.2d 290, 303, 304 (1978), mandates that a statement must be voluntary in the sense of being " 'the product of a rational intellect and a free will' " before it can be used consistent with due process. Since no finding as to voluntariness had been made at trial, the federal district court adjudged it

proper to withhold a ruling on LaRoche's constitutional claim until the state court could determine retroactively whether La-Roche had spoken voluntarily. On October 31, 1977, the state court held a hearing and entered findings that LaRoche's statement had indeed been voluntarily given. La-Roche's present argument, therefore, focuses not so much upon the trial error as upon the question whether the belated hearing was an appropriate remedy for that error. He urges that the invitation to the state court to conduct a hearing was error since Florida law mandates a new trial to vindicate *Denno* rights that have been ignored at trial. *See, e. g., Greene v. Florida*, 351 So.2d 941 (Fla.1977). The policy in that rule reflects a judgment that a judge conducting a belated voluntariness hearing is less likely to be objective in a piecemeal proceeding when he knows the defendant has already been convicted by a jury than he would be in a preliminary proceeding where the presumption of innocence still attaches. These considerations do seem especially telling here, since the very trial judge who unaccountably refused the *Denno* request was charged with conducting the belated hearing. Nevertheless, there is no suggestion that the judge was biased against LaRoche or failed to conduct the hearing in an impartial fashion. Though it would seem appropriate for federal courts to defer to such reasonable state policies in these situations, the hearing has now been held and a satisfactory ruling on voluntariness has been derived. Overlooking these expenditures of judicial resources to grant habeas relief leading to a new trial is farther than we are willing to go in deference to the legitimate state policy.[2]

At trial LaRoche took the stand and testified, among other things, that he had not

2. Though LaRoche also argues that the belated hearing was inappropriate as a matter of constitutional law as well, we observe that such a remedy has been approved by the Supreme Court in the context of voluntariness issues occurring before the *Denno* decision. *See Sigler v. Parker*, 396 U.S. 482, 484, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970). Though there are policy reasons, as evidenced by the Florida rule, for granting a new trial when *Denno* errors occur well after the requisite standards have been made known, a contrary rule in a case like this certainly has no constitutional deficiency. There has been no lapse in due process if the statement is shown at some point to have been voluntarily made.

had intercourse with his wife on the day of the alleged rape. This evidence was relevant because the doctor who had examined the complainant after the alleged rape testified that he had been unable to detect either sperm or acid phosphatase in her vagina. Though large quantities of sand were present in the vagina, there was no direct physical evidence of penetration to corroborate the complainant's testimony. The doctor further testified, however, that absence of sperm or the acid excluded the possibility of ejaculation but not penetration, which remains sufficient for a rape charge. He finally testified that if a male had had intercourse with another woman a few hours earlier, the amount of acid secreted during a second sexual encounter would have been minimal. In this context, LaRoche denied having had intercourse with his wife, and in rebuttal she testified that she had had intercourse with him, during which he had ejaculated, earlier in the day in question.

■ LaRoche argues that allowing his wife to so testify, over his objection, violated the Florida marital privilege and his fourteenth amendment rights to privacy, thereby depriving him of due process and a fair trial. Regarding simply the Florida evidentiary privilege, any error by a Florida court would be ground for federal collateral relief only if it violated "fundamental fairness"—a stringent standard that requires that the error be " 'material in the sense of a crucial, critical, highly significant factor.' " *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.), cert. denied, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976). We are not convinced that an error regarding the marital privilege was committed. Even if it was, the requisite measure of prejudice is not present. Though Mrs. LaRoche's testimony was certainly damaging, it was merely cumulative as impeachment evidence. Moreover, it was not a compelling explana-

tion for the lack of semen or acid phosphatase in complainant since she testified that the sexual encounter occurred at 10:00 a. m., much earlier than the relevant few hours before the alleged rape at 9:00 p. m.

■ As for LaRoche's asserted constitutional claim, we see no persuasive reason to extend the right of privacy, based as it is on "penumbras and emanations" of other more explicit constitutional rights, to evidentiary matters protecting marital relationships, long thought to be uniquely within the regulatory province of the individual states.

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

I think that what we are dealing with in this case is tantamount to a confession, and that the rulings of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), call for the application of a per se rule. The hearings adumbrated by *Jackson v. Denno*, should receive our committed adherence. *Chapman v. California* was not conceived as an absolution for all constitutional errors and I subscribe to the belief that there are some errors of constitutional magnitude that should receive per se treatment.[1] The case sub judice falls within that ambit.

Even if my position with respect to the applicability of the per se rule is not the law of this circuit, I still do not subscribe to the majority analysis in this case.

The majority concludes that the trial court erred when, over the defendant's objection, it conducted a hearing on the admissibility of the defendant's statements in the presence of the jury. The majority labels this procedure "patently unreasonable" under Constitutional standards. Maj.Op. at 724. With this conclusion, I heartily agree. I cannot, however, agree

---

1. "[T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . ." *Chap-*

*man v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28 (1967).

with the majority's conclusion that the error was harmless.

In holding this error to be harmless, the majority notes that the in-court hearing *disclosed* nothing prejudicial to LaRoche. But LaRoche may well have been prejudiced from what the jurors *inferred* from the hearing. The majority recognizes this possibility, but labels it an "outside chance." Maj.Op. at 724. I feel that there is certainly much more than an outside chance of such prejudice. In fact, I think it likely that the jurors did draw "adverse inferences from watching LaRoche's attorney attempt to suppress the statement on what might have seemed a 'technicality.'" Maj.Op. at 724. It is likely that the jurors resented what they may have viewed as the defense attorney's efforts to get his client off on a technicality. Also, the jurors may well have resented LaRoche for trying to keep from them what they no doubt regarded as highly probative evidence. But most important, the jurors must have concluded that the suppressed evidence was very damaging to LaRoche. Why else, they would reason, would the defense attorney struggle so hard to keep it out?

I cannot subscribe to the majority's view that the later introduction of the suppressed statement would have satisfied any curiosity the jurors might have felt. It was not made clear at the hearing that only one statement was at issue. The jurors may well have imagined that a whole string of statements, including a confession, was suppressed. This seems especially likely since the statement which later came out was not that harmful to LaRoche.[2] Thus, it is likely that the jurors concluded that the suppression fight must have applied to other statements as well.

The majority notes that "no concrete prejudice has been alleged or demonstrated by LaRoche." Maj.Op. at 724. But the majority gives no hints as to how LaRoche could demonstrate such "concrete prejudice." What does the majority want? Affidavits from the jurors? A tape recording of their deliberations? LaRoche has done all that he can to show prejudice. He has pointed out what common sense tells us: that the jurors must have drawn adverse inferences from the in-court hearing. This should be sufficient. *See United States v. Nielsen*, 392 F.2d 849, 852 (7th Cir. 1968).

The majority's final reason for holding this error harmless is the "strong" case against LaRoche. Maj.Op. at 724. I would not characterize the case against LaRoche as strong. But whether or not the case was strong, there was certainly not such overwhelming evidence of guilt that I could conclude that this error was harmless beyond a reasonable doubt. Since this is a constitutional error,[3] to hold it harmless, the court must be able to conclude that it is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

No one can tell, of course, exactly what impact the hearing actually had upon the jury. But because I think there is a strong possibility that LaRoche was prejudiced, I cannot conclude with the requisite degree of certainty that the error was harmless. Accordingly, I would grant the writ of habeas corpus.

---

2. The statement was not in itself inculpatory. It was a prior inconsistent statement which impaired the credibility of LaRoche.

3. It is a violation of LaRoche's fifth amendment right as applied to the states through the due process clause of the fourteenth amendment.